**Samuel L. BYRD, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11350.**

District of Columbia Court of Appeals.

Argued May 11, 1977.

Decided Aug. 22, 1977.

August Bequai, Washington, D. C., appointed by this court, for appellant.

Iraline G. Barnes, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Bette E. Uhrmacher and Lillian A. McEwen, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, NEBEKER, Associate Judge, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

After pleading guilty to a charge of assault with a dangerous weapon, appellant was sentenced to a term of from three to nine years' imprisonment. Thereafter appellant, having obtained other counsel, moved with supporting authority for leave to withdraw his plea of guilty. As grounds for the motion he urged that he was without effective assistance of counsel when he entered the plea and that he was subjected to pressure. The motion was denied and this appeal followed.

Appellant makes a number of claims of error, but the only issue deemed by us to be of substance is whether the trial court abused its discretion in denying the post-sentence motion to withdraw the plea of guilty. Finding an abuse of discretion, we reverse.

A brief review of the record is required to put the issue in perspective. Appellant was charged in a four-count indictment with assault with intent to kill while armed (D.C.Code 1973, §§ 22–501, –302), assault with intent to kill (D.C.Code 1973, § 22–501), assault with a dangerous weapon (D.C. Code 1973, § 22–502), and carrying a pistol without a license (D.C.Code 1973, § 22–3204).

Appellant moved, pretrial, to suppress statements made by him after his arrest. At the hearing on that motion, there was uncontroverted testimony by government witnesses in substance as follows.

At the time of his arrest, appellant was read the *Miranda*[1] warnings. Nevertheless, he admitted that he shot the complaining witness, but insisted that the shooting was in self-defense. The complaining witness identified appellant as his assailant. Upon conclusion of the testimony, the trial court denied the motion to suppress and immediately thereafter the case was called for trial.

Appellant announced to the court that he was not ready for trial and requested a postponement. The reasons assigned were that he had met with his court-appointed counsel only on rare occasions and that his

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

counsel had refused to interview and obtain the presence of certain claimed alibi witnesses.[2] Based upon what he termed ineffective assistance, appellant informed the court that he did not want further representation by his appointed counsel.[3] Then followed a lengthy and wide-ranging verbal exchange between appellant and the trial judge.

THE COURT: If you don't want [your present counsel] to represent you, . . . .. You can do the same thing any other defendant in your circumstances can do. You can retain somebody and have him come in here and represent you, or you can represent yourself.

Appellant informed the court that he would like to retain another attorney. The court responded:

It is too late to do that now. If you think I am going to stop the trial of this matter until you get a chance to retain an attorney, Mr. Byrd, you have another thing coming.

Appellant insisted that he had no faith in his attorney and again asked for a postponement.[4] The court refused the request saying: "There won't be any delay in this matter. None whatsoever." Appellant stated: "I'm almost into the position where I am forced to take a plea." The trial court disagreed, but cautioned appellant that he shouldn't expect his trial counsel "to work miracles."

THE COURT: See, I asked you—Now, [your trial counsel], all he can do is work with what you give him. You proffered some witnesses who you told [your trial counsel] were your alibi witnesses. Now, there ain't no way in the world, Mr. Byrd, that [your attorney] . . . —

MR. BYRD: Yes, sir.

THE COURT: —is going to make alibi fly in this case. And alibi came from

you. There would be no way in the world. . . .

MR. BYRD: I understand this. I see, that Your Honor.

THE COURT: I couldn't make alibi fly in this case.

MR. BYRD: I see that you are a very just man.

\* \* \* \* \* \*

THE COURT: See, but alibi just won't fly in this case.

\* \* \* \* \* \*

MR. BYRD: Won't fly?

THE COURT: You can't fly alibi in this case. It just won't work. See, I mean [your attorney] doesn't have anything to do with that. . . .

Appellant then asked the trial court if he still had the option of representing himself. The court replied in the affirmative and appellant said: "I guess I will do that if I am up against the wall."

The court asked appellant what he would do when the witness who testified at the suppression hearing repeated their testimony before a jury. Appellant replied that he would take the stand and explain to the jury that he did not shoot the complaining witness.

At this point, the court granted appellant's motion to proceed pro se, but ordered appointed counsel to remain and assist in the defense.

The court then suggested that appellant would be well advised to become acquainted with *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and the concept of an *Alford* plea, since, in the court's words, sometimes it is in a defendant's best interest to plead guilty "because of the weight and the nature and the extent of the Government's evidence . .

**2.** The record indicates that some such witnesses were present in the courtroom during the suppression hearing. Who these witnesses were, and what their testimony would have been, is not set out in the record.

**3.** On appeal, appellant is represented by new counsel.

**4.** While the trial of this matter had been delayed several times, this was apparently the first time the defense had requested postponement.

and the lack of such weight and extent and breadth so far as his evidence was concerned."

Having informed appellant of the advantages of an *Alford* plea, the court continued saying:

Now, you know yourself, I'm sure, if you come up here and you get convicted of assault with intent to kill while armed with a pistol under these circumstances, I sit up here and listen to all this evidence about his man being shot, this .45 automatic, two or three weeks in the hospital, all these pictures and photographs and doctor testifying he is almost dead, you know, if you get convicted, the jury brings back a verdict of guilty in that, you are looking at a long ways down the road—long ways down the road.

MR. BYRD: Yes, sir.

THE COURT: Too many years to even think about, see. How old are you now, twenty-two? Twenty-two, see. Long time down the road.

Now, what is the Government offering in this case?

What did they offer, Mr.—

[APPELLANT'S COUNSEL]: ADW felony, Your Honor.

[ASSISTANT U.S. ATTORNEY]: Previously he was offered ADW felony, Your Honor.

THE COURT: I tell you, Mr. Byrd, if it had been me under these circumstances, I would take that so fast it would make their heads swim.

\* \* \* \* \* \*

THE COURT: I don't know why they made you that offer to tell you the truth. I never would have made it to you if I was them—an assistant. Now, I am just going to tell you, see. You need good advice. And you are your own lawyer. And I am talking to you like I would talk to a lawyer. You seem to know about these things as well as anybody else does.

. . .

You are talking about a maximum of ten years.

\* \* \* \* \* \*

See, what you are doing, Mr. Byrd. . . . I know it is your life. And I know it is your time. . . . But, Mr. Byrd, I am telling you there's no way in the world, if I was in [your attorney's] shoes, that I would have the slightest hope of walking out of this one, because . . . they got you right between the eyes. . . .

The court then pointed out that the jury would have to disbelieve every one of the government's witnesses in order to acquit appellant, saying:

See, if they don't, the price is so terrible that you might have to pay. You might ask yourself, do I want to give a possible ten years in order to avoid the risk of getting . . . me on life. See? See, Mr. Byrd, the thing about it in some cases life don't mean too much because you know the Court ain't going to sentence a man to life. . . . But now here in your case you are talking about a situation where a man was shot. He was shot with a gun. You got a previous record of armed robbery. You've got a previous record of carrying a dangerous weapon. See?

MR. BYRD: Yes, sir.

THE COURT: Now, if there is any man that the Court would consider giving life to, it is you.

MR. BYRD: Yes, sir.

Appellant thereupon indicated to the court that he was ready to plead guilty to the single charge of assault with a dangerous weapon and the plea was entered.

■ The sequence of events at the conclusion of the suppression hearing has been set out in considerable detail so as to distinguish this case from one in which the trial court has carefully confined its participation in the plea bargaining process within the limits delineated by Superior Court Criminal Rule 11.[5] Where, as here, the

---

5. Super.Ct.Cr.R. 11 provides in pertinent part:
    (d) Insuring That the Plea is Voluntary. The court shall not accept a plea of guilty

. . . without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the

defendant is proceeding pro se, it is of course the duty of the trial court to render not only the advice and guidance the Rule requires, but also to exercise the restraint it mandates. The sense of all of this is that the trial court's remarks must not cross the fine line that demarcates advice from coercion. From the record in this case, as quoted above, it appears that the line was crossed in an impermissible way manifesting an almost complete disregard for the mandatory requirements of Rule 11(e).

■ The essence of the judicial role is neutrality. However this is not to say that the trial judge is relegated to the status of a mere observer during the proceedings, but rather that his participation must be of a neutral nature.

We do not forget that a trial judge has the responsibility of moving a trial along in an orderly and efficient manner; in short that he has the responsibility of managing the conduct of a trial. But that does not mean overmanaging. . . [*Williams v. United States*, D.C.App., 228 A.2d 846, 848 (1967).]

In discussing the permissible role of the trial judge, it has been pointed out that:

The public interest requires that persons who have committed crimes be convicted of them. But the responsibility for producing the evidence which will persuade twelve jurors of guilt beyond a reasonable doubt is upon the prosecutor. It is a serious public responsibility, but it is upon the prosecutor and upon him alone. The judge has no part in that task. The prosecutor represents society in the prosecution. The attorney for the defense represents the accused. The judge is a disinterested and objective participant in the proceeding. . . . [*Billeci v. United States*, 87 U.S.App.D.C. 274, 283, 184 F.2d 394, 403 (1950).]

*See also Whittaker v. United States*, 108 U.S.App.D.C. 268, 281 F.2d 631 (1960).

Of course, in the case at bar the court's comments were made before a jury was empanelled, but the possible effect of those comments upon appellant was perhaps as egregious as they would have been if made during a trial. In any event, it is enough that appellant's guilty plea, made under the circumstance outlined above, negated his Sixth Amendment right to a trial by jury.

Fundamental standards of procedure in criminal cases require that a plea of guilty to the charge or charges contained in an indictment or information be entered freely, voluntarily, and without any semblance of coercion. A plea of guilty interposed as the result of coercion is not consistent with due process . . . . [*Euziere v. United States*, 249 F.2d 293, 294 (10th Cir. 1957).]

Moreover, we have specifically condemned the use of threats of heavier sentencing when employed by a trial court to influence a defendant to admit guilt. *Miler v. United States*, D.C.App., 255 A.2d 497 (1969); *cf. Williams v. United States*, D.C.App., 293 A.2d 484 (1972); *Robertson v. United States*, 84 U.S.App.D.C. 185, 171 F.2d 345 (1948). The reason for this is that implicit in Super.Ct.Cr.R. 11 is the requirement that any guilty plea represent a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Henderson v. Morgan*, 426 U.S. 637, 647–51, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

Because of his self-defense statements and the testimony of the government's wit-

result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty . . . results from prior discussions between the prosecutor and the defendant or his attorney.

(e) Plea Agreement Procedure.

(1) In General. The prosecutor and the attorney for the defendant or the defendant

when acting pro se may engage in discussions with a view toward reaching an agreement . . . .

\* \* \* \* \* \*

*The court shall not participate in any such discussions.* [Emphasis supplied.]

nesses at the suppression hearing, appellant will undoubtedly have a difficult time convincing a jury of his innocence based on an alibi defense. It is, however, appellant who runs the risk of conviction and it is appellant who must decide, preferably after consulting with counsel, whether he wishes to have the jury finally determine his guilt or innocence. But whatever may be said of the wisdom of appellant's plea, considerations of fundamental fairness must control, for:

> No matter how heinous the offense charged, how overwhelming the proof of guilt may appear, or how hopeless the defense, a defendant's right to continue with his trial may not be violated. His constitutional right to require the Government to proceed to a conclusion of the trial and to establish guilt by independent evidence should not be exercised under the shadow of a penalty—that if he persists in the assertion of his right and is found guilty, he faces, in view of the Trial Court's announced intention, a maximum sentence, and if he pleads guilty, there is the prospect of a substantially reduced term. To impose upon a defendant such alternatives amounts to coercion as a matter of law. [*Thomas v. United States*, 368 F.2d 941, 945 (5th Cir. 1966), quoting *United States v. Tateo*, 214 F.Supp. 560, 567 (S.D.N.Y.1963).]

In its consideration of appellant's post-sentence motion to withdraw his plea of guilty, the trial court was controlled by Super.Ct.Cr.R. 32(e). That rule provides in the part here pertinent that ". . . to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." Appellant's motion was, of course, addressed to the sound discretion of the trial court and its action on the motion can be disturbed by this court only upon a showing of abuse of discretion. *Shepard v. United States*, D.C.App., 363 A.2d 291 (1976); *Hicks v. United States*, D.C.App., 362 A.2d 111 (1976); *Bettis v. United States*, D.C.App., 325 A.2d 190, 195 (1974); *Smith v. United States*, 116 U.S. App.D.C. 404, 324 F.2d 436 (1963).

What seems crystal clear from our view of the record is that the trial court's comments during the dialogue "were reasonably calculated to influence the [appellant] to the point of coercion into entering [his] plea of guilty." *Euziere v. United States, supra* at 295. Thus it cannot be said that the plea of guilty was voluntary within the purview of Super.Ct.Cr.R. 11(e)(d). The conclusion is therefore compelled that there was resulting injustice and since it is manifest in the record, the trial court clearly abused its discretion when it denied appellant's post-sentence motion to withdraw his plea of guilty.

The order on appeal denying appellant's motion to withdraw his plea of guilty is reversed, and this case is remanded with directions that appellant's motion be granted and the judgment of conviction be vacated to permit appellant to stand trial.

*So ordered.*