**Eddie WILSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 88–841, 88–946, 89–1269 through 89–1271.**

District of Columbia Court of Appeals.

Argued April 11, 1991.
Decided June 5, 1991.

Calvin Steinmetz, appointed by this court, Washington, D.C., for appellant.

Jennifer M. Anderson, Asst. U.S. Atty., Washington, D.C., for appellee. Jay B.

**1010**

Stephens, U.S. Atty., with whom John R. Fisher, Kevin A. Ohlson, Roy W. McLeese, III, and J. Edward Agee III, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, STEADMAN, Associate Judge, and BELSON, Associate Judge, Retired.[*]

PER CURIAM:

Appellant Eddie Wilson appeals from the denial of his motion pursuant to D.C.Code § 23–110 (1989) to vacate judgments of conviction resulting from his guilty pleas in 1976. He contends that the trial judge violated Super.Ct.Crim.R. 11(e) (1990) and the Due Process Clause of the Fifth Amendment by participating in the plea negotiations and by sentencing him to life imprisonment in violation of the plea agreement. He also contends that the imposition of concurrent sentences on 34 counts in his absence requires vacation of those sentences. Because Rule 11(e) was not in effect when appellant entered his guilty pleas and he has failed to demonstrate manifest injustice, we affirm.

I

Appellant was charged in three indictments with over 100 counts, involving various offenses and victims, including first degree murder while armed, armed robbery, arson, and kidnapping. On October 5, 1976, he entered pleas of guilty to thirty-six counts.

Prior to the plea hearing, defense counsel met with the prosecutor in the trial judge's chambers to discuss a plea agreement; appellant was not present. According to defense counsel's testimony at the hearing on the § 23–110 motion, the trial judge did not "make any promises," but:

indicated that there was a range of sentence which he was going to give to [appellant], and that was going to be a range of—In the twenties as a minimum, and in the eighties, high seventies and eighties—I think it was 22 to 28 was going to be the minimum, and whatever three times each of those numbers—66 to 84 would be the maximum.

Defense counsel thereafter discussed this with appellant, told him that no promises had been made, and appellant indicated his willingness to enter pleas of guilty. Later the same day the judge accepted appellant's guilty pleas.

At the plea hearing, the trial judge, upon confirming that appellant understood that by pleading guilty he was waiving his right to raise an insanity defense, advised appellant of his commitment to a sentencing range from twenty-two to sixty-six years or up to twenty-eight to eighty-four years.[1] The judge also ascertained that no promises, threats or trickery had caused appellant to plead guilty, advised appellant that he could get 300 to 900 years' imprisonment if he went to trial and was convicted, and further advised appellant of the rights that he would waive if he pleaded guilty. Appellant responded affirmatively that he was pleading guilty voluntarily and of his own free will, and that he was satisfied with defense counsel. With respect to the sentencing range, the trial judge received a negative response to his question whether appellant thought that the judge was "tricking you with the prospective sentence that I suggested to the attorneys...." After further colloquy between the judge and appellant, and identification by the prosecutor of the counts to which appellant was to plead guilty, the judge accepted appellant's pleas to 36 counts and ordered a youth study.[2]

---

[*] Judge Belson was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on June 1, 1991.

1. The trial judge stated:

THE COURT: All right. You further understand that I'll commit myself to the pre-trial plea bargain in this case, as I set forth the

limitations of the sentence with the attorneys' approval, but just so you know it, it's anywhere from twenty-two to sixty-six years, or up to twenty-eight to eighty-four years. He's told you that?

THE DEFENDANT: Yes, sir.

2. When defense counsel thereafter requested that appellant be given a sentence under 18 U.S.C. § 4208, the trial judge commented that

Subsequently, at sentencing three months later, the trial judge expressed regret that he had previously committed himself to the sentencing range ("that was the biggest mistake I ever made"), but stated that he would abide by his range-of-sentence commitment. The judge then sentenced appellant to life imprisonment for murder, observing that "[a]s I understand life imprisonment, it is not less than 20 nor more than 60 years," and to 8 to 24 years for armed robbery, consecutive to the life sentence. The transcript does not reveal further discussion about sentences on the other counts, but orders entered that date indicate that the judge imposed concurrent sentences on the remaining 34 counts, and that 16 counts were dismissed; the trial court jacket docket indicates that the sentences were imposed in appellant's presence.

Appellant filed three *pro se* motions since being sentenced.[3] The third *pro se* motion, dated October 25, 1987, sought to vacate illegal sentences and set aside appellant's convictions, claiming that he should have been sentenced under the Youth Act and that he was given a plea bargain, not by the government, but by the trial judge, who was biased against him. Appellant also alleged that the illegal sentences resulted from defense counsel's ineffectiveness in failing to investigate and prepare a defense and to object to the illegal sentences. Appellant further claimed that his sentences were illegal sentences because of a merger of counts. The trial judge denied the motion. Because the trial judge failed to address appellant's ineffective assistance claim, this court stayed appellant's subsequent appeal, appointed counsel, and

directed the judge to address appellant's ineffectiveness claim. The trial judge thereafter held a hearing and denied the motion.

## II

■ Appellant contends that the trial judge abused his discretion in denying the motion to vacate his sentences because the judge actively participated in the plea negotiations and agreed to impose a sentence as part of the plea agreement in violation of Super.Ct.Crim.R. 11(e). He maintains that the judge's participation rendered his pleas coerced and involuntary under the Due Process Clause of the Fifth Amendment. We treat appellant's motion to vacate his sentence under D.C.Code § 23–110 as a motion under Super.Ct.Crim.R. 32(e) to withdraw a guilty plea. *McClurkin v. United States*, 472 A.2d 1348, 1352 (D.C.), *cert. denied*, 469 U.S. 838, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984). Denials of such motions will not be reversed absent a clear abuse of discretion and are tested under the "manifest injustice" standard. *Willis v. United States*, 468 A.2d 1320, 1322 (D.C.1983).

Both Super.Ct.Crim.R. 11(e) and the Due Process Clause limit the role of trial judges in plea bargaining negotiations. *German v. United States*, 525 A.2d 596, 601 n. 6 (D.C.), *cert. denied*, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987); *see United States v. Adams*, 634 F.2d 830, 836 n. 3 (5th Cir.1981). The prohibition contained in Rule 11 as amended November 10, 1976, is absolute. *German, supra*, 525 A.2d at 600 ("the sentencing judge should take no part whatever in any discussion or communication regarding the sentence to be imposed

the youth study "may well be the determining factor for whether he gets twenty-two to sixty-six or twenty-eight to eighty-four years." The judge stated, in appellant's presence but presumably to defense counsel, that he hoped no promises had been made to appellant. The judge also asked appellant if he had anything to say on the record because he was going to face a lot of time. Appellant stood mute.

**3.** The first motion sought a reduction of sentence on the grounds that at the plea hearing he was on medication and did not know what was happening, and alternatively, to withdraw his

pleas because he did not recall them. The motion was denied. The second motion, filed more than five years later, sought to vacate his sentence and withdraw his guilty plea under D.C.Code § 23–110, principally on the grounds that his defense attorney had promised that he would be sentenced under the Youth Act and that because of his age his plea was not voluntary; he requested a hearing. The second motion was denied without prejudice and referred to an attorney under the Criminal Justice Act. The record does not indicate that an attorney was appointed.

prior to the entry of a plea of guilty or conviction, or submission to him of a plea agreement") (quoting *United States v. Werker*, 535 F.2d 198, 201 (2d Cir.), *cert. denied*, 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976)); Super.Ct.Crim.R. 11(e) (1990) ("[t]he Court shall not participate in any such [plea] negotiations"). This prohibition is far more stringent than that provided by Due Process, which permits a "moderate type of participation" in plea negotiations. *German, supra*, 525 A.2d at 601 n. 6 (quoting *Damiano v. Gaughan*, 770 F.2d 1, 2 (1st Cir.1985)). The constitutional concern is that "judicial participation in plea negotiations not be so great as to render a guilty plea involuntary." *Adams, supra*, 634 F.2d at 836 n. 3 (citations omitted); *see id.* at 836–37 (discussing "prophylactic scheme" of Rule 11).

█ At the time appellant entered his guilty pleas, however, Rule 11 did not contain the prohibition that now appears in Rule 11(e).[4] *Punch v. United States*, 377 A.2d 1353, 1358 n. 9 (D.C.1977) (applying Rule 11 as it read at the time of defendant's plea), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978).[5] Former Rule 11 did not address the issue of judicial participation beyond determining whether a plea was voluntary. The United States Court of Appeals for the District of Columbia Circuit had indicated in dictum prior to the time of appellant's pleas that overt plea bargaining by a trial judge was improper under Rule 11, but viewed as permissible trial judge efforts to assure that the defen-

dant made a knowing appraisal of his options and understood "the value of the prosecutor's promises before entering his plea." *Scott v. United States*, 135 U.S. App.D.C. 377, 388, 419 F.2d 264, 275 (1969) (opinion of Bazelon, C.J., Part V.).[6]

Appellant has not met his burden to show that the trial judge participated in the plea bargaining process in a manner which rendered his plea involuntary. *Byrd, supra* note 5, 377 A.2d at 405. Appellant was not present during the negotiations in the judge's chambers and therefore could hardly have been directly coerced by the judge's participation in chambers. The Rule 11 proceeding makes clear that the prosecutor, not the judge, determined the counts to which appellant had to plead guilty. Neither in chambers nor in court did the judge indicate that he would impose a specific sentence. *German, supra*, 525 A.2d at 602 ("the judge had not actually reached the point of deciding what particular sentence to impose," and absence of specificity as to sentence indicates lack of coercion) (citing *Adams, supra*, 634 F.2d at 833). The judge's reference to the possible sentences appellant might receive after a trial was tempered by the judge's statement to appellant that "if you think I'm tricking you with the prospective sentence that I suggested to the attorneys, you let me know, because I don't want to trick you," and by the fact that the judge did not comment on the strength of the government's case before accepting appellant's pleas. *See Byrd, supra* note 5, 377 A.2d at 403.[7] Further-

---

4. While the American Bar Association Standards Relating to Guilty Pleas (1968) included, at the time of appellant's pleas, a standard that "[t]he trial judge should not participate in plea discussions," § 3.3(a), the ABA Advisory Committee acknowledged that "[a]lthough it is by no means the prevailing practice, it is not uncommon for trial judges to participate in plea discussions and to promise or predict certain concessions in the event that the defendant pleads guilty." *Id.* § 3.3 commentary at 72 (citation omitted).

5. In *Byrd v. United States*, 377 A.2d 400, 404–05 (D.C.1977), relied on by appellant, the court's invocation of Rule 11(e) was made in the context of the court's conclusion that the defendant's plea had been coerced; the court did not address whether Rule 11(e) was retroactive. As required by *Punch, supra*, we apply former Rule

11 to appellant's pleas. *M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971).

6. In *Scott*, Judge Wright did not join Part V of Chief Judge Bazelon's opinion. *Id.* 135 U.S.App. D.C. at 392, 419 F.2d at 279. Judge Leventhal concurred in the judgment only. *Id.* at 394, 419 F.2d at 281.

7. In *Byrd*, the judge stated to the *pro se* defendant that "if it had been me under these circumstances, I would take [the plea] so fast it would make their heads swim," and "if there is any man that the Court would consider giving life to, it is you." *Id.* There are other significant differences between the instant case and *Byrd* since Byrd was without counsel and facing only a four-count indictment. *Id.* at 401, 402.

more, the judge advised appellant that he had the right to go to trial and to continue the trial.

Under these circumstances, we are satisfied that the trial judge's comments were not "reasonably calculated to influence the [appellant] to the point of coercion into entering [his] plea[s] of guilty." *Id.* at 405 (quoting *Euziere v. United States,* 249 F.2d 293, 295 (10th Cir.1957)). It seems far more likely that the reality of going to trial with the strong possibility of multiple convictions and stiff sentences, rather than the judge's statements, influenced appellant's decision to enter his pleas of guilty. Appellant was advised by his counsel that he could be sentenced to 300 to 900 years if he were to be convicted as charged, that his counsel could not verify his alibi claims, and that counsel, with whom he told the trial judge he was satisfied, thought that it would be in appellant's best interest to accept the plea bargain. These external factors, rather than simply the judge's statements, more likely induced appellant to plead guilty. *See German, supra,* 525 A.2d at 602. Defense counsel testified at the motions hearing that he thought appellant's decision to plead was an intelligent choice, and that appellant was not tricked into pleading guilty. *See Damiano v. Gaughan, supra,* 770 F.2d at 1, 2 (plea not set aside where it is "characterized by the then defense attorney as free and voluntary"). Appellant repeatedly affirmed at the Rule 11 hearing that his pleas were voluntary and not coerced. Accordingly, appellant has failed to demonstrate manifest injustice. *McClurkin, supra,* 472 A.2d at 1352.[8]

### III

Appellant also contends that he should be allowed to withdraw his guilty plea to first degree murder since the trial judge violated the plea agreement by sentencing him to life imprisonment and not twenty-eight to eighty-four years.

Rule 11 requires that the trial judge accurately inform the defendant of the consequences of the plea before accepting a plea. By committing himself to a sentencing range of a maximum of twenty-eight to eighty-four years, the trial judge misinformed appellant since by statute the judge was required to impose a life sentence on the first-degree murder count. *Goodall v. United States,* 584 A.2d 560, 563 (D.C. 1990); *Holland v. United States,* 584 A.2d 13, 15 (D.C.1990); *Hicks v. United States,* 362 A.2d 111, 113 (D.C.1976); D.C.Code § 22-2404 (1973). Appellant was sentenced to a minimum sentence of 28 years (minimum of 20 years on life sentence and consecutive 8 years for armed robbery), which was consistent with the judge's sentencing range, but the maximum sentence (life plus 24 years consecutive for armed robbery) exceeded the judge's sentencing range of 84 years. However, appellant has failed to show that this error resulted in manifest injustice. *Hicks, supra,* 362 A.2d at 113 (no manifest injustice where additional sentence of 1 to 3 years not substantially longer than defendant believed possible at time of his plea); *United States v. Timmreck,* 441 U.S. 780, 785, 99 S.Ct. 2085, 2088, 60 L.Ed.2d 634 (1979) (not complete miscarriage of justice where defendant not informed of special parole term of at least three years).

The trial judge informed appellant prior to accepting his plea that he might impose a sentence of 84 years, making it possible that appellant (then age 19) would remain incarcerated until he was 103 years old. Regardless of whether a life sentence is substantially different from 84 years under these circumstances, neither appellant, who admitted that he had been arrested eight or nine times as a juvenile and had appeared in court with counsel on several occasions, nor defense counsel expressed any concern

---

8. Appellant also contends that he was denied the effective assistance of trial counsel on the ground that trial counsel advised him to accept a plea agreement which violated Rule 11 and the Fifth Amendment. In view of our conclusion that the trial judge's participation in the plea negotiations did not violate former Rule 11, and did not render appellant's pleas involuntary, this contention likewise fails. Appellant has failed to prove that counsel's performance was deficient or that he was prejudiced under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

regarding the judge's imposition of a life sentence when afforded the opportunity to do so. *See Holland, supra,* 584 A.2d at 16 (defendant's post-sentencing correspondence failed to protest sentence in excess of consequences stated at Rule 11 hearing). Appellant did not raise this contention until more than a decade after he was sentenced. The eleven-year delay between his pleas and his motion undermines any claim that the judge's error was the factor underlying appellant's guilty plea. *See Ramsey v. United States,* 569 A.2d 142, 148–49 (D.C. 1990) (citations omitted). Moreover, the possible prejudice to the government were appellant allowed to withdraw his guilty plea at this late date weighs against appellant's claim. *Id.* at 149. In addition, appellant has not claimed that "if he had been properly informed of [the correct maximum sentence] he would not have pleaded guilty." [9] *Holland, supra,* 584 A.2d at 16; *Hicks, supra,* 362 A.2d at 113. Significantly, defense counsel testified at the motions hearing that the minimum-range number was "more controlling" than the maximum, suggesting that the judge's error in stating the maximum sentence did not influence appellant's plea. Given all of the circumstances, see also Part III, *supra,* we find no manifest injustice.

## IV

■ Finally, appellant contends that because the sentences on the 34 counts were imposed in his absence, they must be vacated. Appellant's right to be present at sentencing is well founded, *see, e.g., Kerns v. United States,* 551 A.2d 1336, 1337 (D.C. 1989); *Warrick v. United States,* 551 A.2d 1332, 1334 (D.C.1988) (due process is implicated); Super.Ct.Crim.R. 43, but he has failed to demonstrate a "complete miscarriage of justice." *Butler v. United States,* 388 A.2d 883, 886 (D.C.1978) (quoting *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1973), and *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)).

It is not clear that appellant was not present when these sentences were imposed. The trial court docket indicates that appellant was present when he was sentenced on all of the counts to which he pleaded guilty. While the transcript of the sentencing proceeding reflects that the trial judge sentenced appellant only on two counts, the orders of sentencing on the other counts are dated the same date as the sentencing proceeding. *See Patterson v. United States,* 575 A.2d 305, 306 (D.C.) (presumption of regularity attaches to court documents), *cert. denied,* — U.S. ——, 111 S.Ct. 172, 112 L.Ed.2d 137 (1990). Defense counsel testified that he "ha[d] some recollection" that the parties had been recalled to the courtroom later in the day when the judge realized that sentences had yet to be imposed on the other counts.

Even if appellant was not present when he was sentenced on the 34 counts, he asserts no prejudice and has demonstrated none. *Butler, supra,* 388 A.2d at 886. Appellant was afforded the opportunity to allocute. The sentences on the 34 counts correspond to the plea agreement and the judge's sentencing scheme and do not change the maximum or minimum terms of imprisonment that appellant must serve.

Accordingly, the judgment is affirmed.

■

---

**9.** Appellant testified at the motions hearing that he "thought [he] was avoiding" a life sentence by pleading guilty, but he did not claim that he would have pled any differently had he known that he was facing a life sentence.