Clinton T. ELDRIDGE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 88–CF–775, 90–CF–140 and 90–CF–1328.

District of Columbia Court of Appeals.

Argued Feb. 25, 1992.
Decided Dec. 30, 1992.

---

Stuart Fisk Johnson, appointed by this court, for appellant.

Clinton T. Eldridge, also filed a brief pro se.

Teresa A. Howie, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas J. Tourish, Jr., Colleen M. Kennedy, and Charles L. Hall, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN and SCHWELB, Associate Judges, and MACK, Senior Judge.

FERREN, Associate Judge:

Appellant pleaded guilty to nine counts of a thirty-seven count indictment and was sentenced to prison for a total of 40 to 120 years.[1] He appeals from the trial court's order denying his motion to withdraw his guilty plea under Super.Ct.Crim.R. 32(e) and to vacate his sentence under D.C.Code § 23–110 (1989 Repl.). The primary issue on appeal is whether appellant understood the consequences of a revised plea package the prosecutor and defense counsel arranged during the plea hearing. This revised agreement resulted in appellant's pleading to an additional burglary count ("count 20"), increasing the overall plea package from eight counts (the original agreement) to nine counts. Because neither the trial court nor defense counsel informed appellant of the consequences of the revised plea bargain, i.e., that he was pleading to an additional burglary count that carried with it an additional possible prison sentence ranging from 5 to 30

---

1. Appellant pleaded guilty to four of the counts without admitting the acts of the crime, under the doctrine of *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

years,[2] we conclude that appellant did not intelligently plead to—and thus did not intelligently waive his constitutional rights with respect to—count 20. Furthermore, because the trial court imposed a consecutive sentence of 5 to 15 years for count 20, we conclude that prejudice occurred resulting in manifest injustice. *See* Super.Ct.Crim.R. 32(e). However, we also conclude that appellant knowingly, voluntarily, and intelligently entered guilty pleas to the other eight counts.

■■■■ This rather unorthodox set of circumstances, flowing from the summary revision of a plea offer inadequately communicated to a defendant, prompts us to suggest a remedy that will alleviate the prejudice of manifest injustice, afford due process to appellant, and at the same time give the government the option of conserving both prosecutorial and judicial resources. We remand this case to the trial court with the following instructions. If the government wishes to petition the court to vacate appellant's conviction on count 20, it may do so and appellant's convictions on the remaining eight counts will stand. Otherwise, the court must allow withdrawal of appellant's guilty pleas and vacate his convictions and sentence on all nine counts.[3]

## I.

On January 25, 1984, the government filed a thirty-seven count indictment against appellant. The charges covered incidents that occurred on seven different dates in the fall of 1983. The alleged offenses included armed rape, sodomy, armed robbery, first and second degree burglaries, and related assault and destruction of property charges. At a March 1984 status hearing, the prosecutor first announced a plea offer. Once it became clear, however, that appellant did not want to plead guilty, the case remained scheduled for trial. On May 14, 1984—the day trial was set to begin—appellant's case was called for disposition. While everyone was waiting for the marshal to bring appellant into the courtroom, the prosecutor informed the court that appellant would plead guilty to eight counts of the indictment. Defense counsel affirmed that expectation. After appellant arrived, the court personally addressed appellant, going over each of the eight counts in the offer. Appellant agreed that the counts enumerated by the court constituted the plea bargain he was prepared to accept.

The court told appellant that he was not required to plead guilty to any of the counts and that he had an absolute right to trial by jury if he desired. The court asked appellant if he had any question about what the court had told him. Appellant said no. The court asked appellant if he understood the consequences of pleading guilty, and appellant replied yes. The court informed appellant that if the court accepted his pleas of guilty, it could impose the maximum sentences provided by law and that, in the case of rape, the maximum sentence was life imprisonment. Appellant replied that he understood. The court then stated the maximum/minimum sentence provided by law for each of the counts in

2. *See* D.C.Code § 22–1801(a) (1989 Repl.).

3. We affirm the trial court's Memorandum Order in all other respects and summarily decide appellant's other claims on appeal. Appellant argues that the trial court erred in denying his motion for a "limited retrospective hearing" on appellant's competency to enter his nine guilty pleas while on 100 milligrams of Mellaril prescribed by his physician, Dr. Cambosos. Because appellant failed to call Dr. Cambosos to testify at the hearing and because the trial court had the benefit of the doctor's written report, we cannot say the trial court abused its discretion in deciding not to reopen the matter. *See King v. United States,* 550 A.2d 348, 354 (D.C. 1988). Appellant also contends the trial court erred during the post-sentencing hearing when

it allowed appellant's defense counsel, over appellant's objections, to testify regarding various confessions appellant had made to him. Because part of appellant's argument at the hearing was based on defense counsel's alleged ineffectiveness, we agree with the trial court that appellant implicitly waived his attorney-client privilege. *See Doughty v. United States,* 574 A.2d 1342, 1343 (D.C.1990). We also note that defense counsel's testimony merely rebutted appellant's allegations concerning their attorney-client relationship. Finally, appellant's *pro se* claim that the motions judge was prejudiced against him merely because the judge also presided over appellant's civil trial, is unsupported by the record.

the plea agreement and informed appellant that sentences could be imposed concurrently or consecutively. The court then went through the specific allegations of each of the eight counts to which appellant was proffering a guilty plea. For each count, the court either engaged appellant in a brief colloquy about the underlying facts or, in the case of *Alford* pleas, *see supra* note 1, asked the government for a complete proffer of what it expected its evidence to be with respect to each offense if the matter were to go to trial. During this part of the hearing, appellant freely admitted to raping one of the complainants (alleged in count 6 of the indictment).

The plea hearing proceeded smoothly until the court reached the eighth and final count of the plea offer. When the court informed appellant of the underlying allegations of that count (count 33 of the indictment)—that he had carnal knowledge of Complainant "M" forcibly and against her will—appellant denied that he had committed the offense and stated that he had only entered Complainant M's home and robbed her. When the court asked appellant why he had indicated earlier that he wanted to plead guilty to count 33, he responded, "I didn't know it was that one." At that point, defense counsel asked for the court's indulgence and conversed with the prosecutor off the record for several minutes out of the earshot of both the court and appellant. Following the short discussion between counsel, the prosecutor informed the court of a revised plea offer:

> [The Prosecutor]: Your Honor, in view of what has been said, the Government is revising [its] plea offer *slightly* [emphasis added].
>
> [The Court]: Yes, sir.
>
> [The prosecutor]: We now would expect Mr. Eldridge to enter a plea of guilty to count 24 of rape, and that would be a straight plea not under the doctrine of Alford, to the rape of [Complainant "W"] and of count 20, burglary in the first degree, with respect to the home of [Complainant W], and count 33, the lesser included charge of assault with intent to—assault with intent to commit rape on

[Complainant M], and that would be under the doctrine of Alford.

The court then restated the prosecutor's proposed revision and asked appellant if he desired to plead as the prosecutor had outlined. Appellant said yes. The court then took appellant through the allegations in each count of the plea revision; appellant admitted that he had committed first degree burglary (count 20) and forcible rape (count 24), and the government presented its expected evidence regarding assault with intent to commit rape under count 33, to which appellant pleaded under *Alford.* Finally, the court confirmed one more time that appellant understood the meaning of his bargain before accepting appellant's guilty pleas.

On July 19, 1984, the court sentenced appellant to consecutive prison terms which, when aggregated, amounted to 40 to 120 years. The aggregate sentence included 10 to 30 years on the count 24 rape charge and 5 to 15 years on the count 20 burglary charge.

After sentencing, appellant filed several *pro se* motions to reduce his sentence. Pertinent to this appeal, on October 17, 1984, appellant sent a letter to the court complaining that he had not understood the plea agreement. On January 31, 1985, appellant filed another motion in which he stated, among other things: "I don't understand what my plea was all about; it was never explained to me in full details." The filing which triggered the instant appeal, however, was appellant's June 10, 1985 *pro se* petition, which inventoried an abundance of alleged infirmities and injustices. After counsel was appointed, appellant filed a supplemental memorandum which characterized appellant's petition as a motion to vacate sentence under D.C.Code § 23–110 and to withdraw his guilty pleas under Super.Ct.Crim.R. 32(e). In particular, this memorandum focused on appellant's plea to count 20 and argued that it was "in error" because appellant did not intend to plead to nine counts rather than eight, as originally agreed. Following a lengthy evidentiary hearing, the trial court issued a 47–page Memorandum Order denying appellant's motion. The court concluded that

appellant had been competent during the plea hearing and that he had knowingly and voluntarily waived his rights and entered his guilty pleas to all nine counts.

## II.

 In order to prevail on a post-sentence motion either to withdraw a guilty plea under Super.Ct.Crim.R. 32(e), or to vacate sentence under D.C.Code § 23–110, appellant must show that he suffered "manifest injustice,"[4] and that the trial court's refusal to grant his motion was an abuse of discretion. *See Goodall v. United States,* 584 A.2d at 562 n. 5 (citing *McClurkin v. United States,* 472 A.2d 1348, 1352 (D.C.), *cert. denied,* 469 U.S. 838, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984)). Given the gravity of the constitutional rights that are waived when a defendant pleads guilty, however, this court will rigorously scrutinize the trial court proceedings at which the defendant enters the plea and later seeks to withdraw it. *See Gooding v. United States,* 529 A.2d at 304–05 & n. 4.

 It is fundamental to due process that a defendant who waives constitutional rights in entering a plea of guilty must do so voluntarily, knowingly, and intelligently. *Boykin v. Alabama,* 395 U.S. 238, 242–43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969); *see Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). "Overwhelming proof of a defendant's guilt proffered by the government does not overshadow the fundamental right of a defendant to choose between proceeding to trial or, in the alternative, making a voluntary and intelligent waiver of that right and other rights pursuant to a plea agreement." *Goodall,* 584 A.2d at 563 (citing *Byrd v. United States,* 377 A.2d at 405). The requirement that a guilty plea be knowing and intelligent is also implicit in Super.Ct.Crim.R. 11, *see Byrd,* 377 A.2d at 404, and underlies its specific directives to the trial judge.

 "In order to plead intelligently, a defendant must know the direct consequences of a plea." *Goodall,* 584 A.2d at 563 (citing *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)). One of these direct consequences of which the defendant must be informed is "the full range of possible punishment," including both the mandatory minimum and the maximum possible sentence to which the defendant may be subjected as a result of a guilty plea. *Goodall,* 584 A.2d at 563; *see also Gaston v. United States,* 535 A.2d 893, 896 (D.C. 1988); Super.Ct.Crim.R. 11(c)(1).

 In the present case, we conclude that appellant's waiver of his constitutional rights was not knowing and intelligent, because neither counsel nor the trial court adequately informed appellant that under the new plea package he was pleading guilty to an additional ninth count that carried with it an additional mandatory prison term and thereby increased the overall mandatory minimum and maximum possible sentence for his crimes.

The specific effect of the prosecutor's revised offer was to: (1) include a plea to rape of Complainant W under count 24 as a substitute for the rape charge under count 33 involving Complainant M that appellant had denied in his colloquy with the court; (2) reduce the plea under count 33 from

---

4. In *Gooding v. United States,* 529 A.2d 301, 305–06 (D.C.1987), this court suggested that a nontechnical Rule 11 defect that affects substantial rights is enough to warrant reversal, and that the "manifest injustice" standard applies only when a defendant attacks his or her plea on grounds other than Rule 11. *See also Springs v. United States,* 614 A.2d 1 (D.C.1992). More commonly, however, this court has simply applied the manifest injustice standard in determining whether a Rule 11 defect requires reversal in cases involving a post-sentence withdrawal motion. *See Wilson v. United States,* 592 A.2d 1009, 1013 (D.C.) (per curiam), *cert. denied,* —— U.S. ——, 112 S.Ct. 666, 116 L.Ed.2d 757 (1991); *Goodall v. United States,* 584 A.2d 560, 563 (D.C. 1990) (per curiam); *Holland v. United States,* 584 A.2d 13, 16 (D.C.1990); *Byrd v. United States,* 377 A.2d 400, 405 (D.C.1977); *Hicks v. United States,* 362 A.2d 111, 113 (D.C.1976) (per curiam). We need not decide in this case whether there is any real difference between the two approaches, since the parties agree that the "manifest injustice" controls and we would come to the same decision regardless of which standard we apply.

rape to an *Alford* plea to assault with intent to commit rape; and (3) add a new plea to burglary under count 20 of the indictment (involving another complainant), a plea which had not been part of the original bargain. Because appellant had already pleaded under *Alford* to count 24's lesser included offense of assault with intent to commit rape, the new agreement in effect "swapped" appellant's pleas to counts 24 and 33: appellant now pleaded to rape under count 24 and pleaded (per *Alford*) to assault with intent to commit rape under count 33, instead of vice-versa as in the original offer to which appellant had agreed. If that had been the extent of the plea revision, there would be no question that appellant voluntarily, knowingly, and intelligently pleaded guilty to the revised plea package, since the number and types of offenses and the range of potential punishment would have been the same as under the original offer. The prosecutor also added to the new package, however, a wholly separate count 20 requiring appellant to plead guilty to an additional charge of burglary, thereby increasing the total number of offenses from eight to nine and increasing appellant's potential sentence by 5 to 30 years. *See* D.C.Code § 22–1801(a) (first degree burglary). By adding this new felony offense to the package, the government made a substantial change in the plea offer; it was considerably more than the "slight" revision the prosecutor told the court he was proposing.

We agree with appellant that, as far as the record shows, defense counsel did not adequately inform appellant of the terms and consequences of the new package. Although the trial court's forty-seven page Memorandum Order denying appellant's motion to withdraw his plea carefully addresses each of appellant's other claims alleging deficiencies in the plea process and inadequacies of defense counsel, the Memorandum fails to state whether defense counsel in fact informed appellant that a new burglary count had been added to the eight counts of the original plea package.[5] At the motion hearing defense counsel stated that he had just assumed appellant knew the package had been revised to include an additional count and, for that reason, had seen no need to inform appellant that an extra burglary count had been added; he relied on the fact that appellant had heard the prosecutor "recite" the revised plea agreement in open court. But as stated above, the prosecutor had said, incorrectly, that the plea offer revisions were "slight." Moreover, a review of defense counsel's hearing testimony shows that counsel himself may not have understood the plea offer revisions and their consequences. Defense counsel said he was "not sure" whether the revisions had resulted in appellant's exposure to a greater sentence. It also appears that counsel may have believed that the prosecutor simply substituted a burglary count because appellant had admitted burglarizing the home of Complainant M under count 33 at the same time he denied raping her. In fact, however, the prosecutor substituted both a separate rape count and a separate burglary count, involving Complainant W under counts 20 and 24, not count 33.

Similarly, we conclude that the trial court's Rule 11 inquiry was inadequate in light of the revised plea package. Although the trial court informed appellant about the substance of the revisions, asked the government for its expected evidence, and earlier in the proceeding had informed appellant about the mandatory minimum and maximum possible sentence for burglary (in reference to a different burglary count that was part of the original plea offer), the court never discussed the effect of the revisions on the overall plea package the court had outlined to appellant at the beginning of the hearing, when the plea

---

5. The trial court did credit defense counsel's hearing testimony that counsel did not object to the government's enhancement of the package from eight counts to nine "because *he* [defense counsel] was concerned that the government would otherwise discover offenses that the defendant had informed defense counsel of but which the government had apparently not learned of." Memorandum Order at 46. That finding, however, begs the question of whether defense counsel actually informed appellant that an extra burglary count had been added and that the extra count carried with it potential for a greater sentence.

bargain had consisted of guilty pleas to eight rather than nine offenses. We believe that, given the length and complexity of the original eight-count plea offer, and further given the last minute revisions at the end of the plea hearing involving three significant changes in the original bargain—arrived at in a hasty discussion between the prosecutor and defense counsel—the court's colloquy with appellant was insufficient to fulfill the requirements of Rule 11 and due process. We hold that Rule 11 required the court to advise appellant that the overall package had been changed to include nine rather than eight offenses, thereby increasing his possible punishment by 5 to 30 years for his proposed guilty plea to the additional burglary count.[6] Such advice from the court was especially critical in order to correct the prosecutor's misleading statement on the record—unrebutted by defense counsel—that the revisions to the original plea offer were "slight."[7] Hence, we cannot agree with the trial court that appellant intelligently pleaded guilty to count 20.

▮ Before we can conclude that manifest injustice occurred, however, we must also determine whether appellant was prejudiced by these errors.[8] *Hicks,* 362 A.2d at 113. In this case, we conclude that appellant did suffer prejudice, insofar as the court relied on count 20 in sentencing him to a wholly unanticipated additional term of 5 to 15 years, to run consecutively to his sentences for the offenses covered by his eight other guilty pleas. The fact that appellant's total sentence for all nine counts amounted to less than the statutory maximum allowable under the original eight-count agreement does not remedy the defects in his plea proceedings. "That a sentence imposed remains less than the maximum possible does not cure a trial court's error of accepting a plea when that plea is based upon manifestly incorrect information." *Goodall,* 584 A.2d at 563–64. Furthermore, notwithstanding the length of appellant's aggregate sentence on the other eight counts, we cannot say that the additional sentence on count 20 could not affect his opportunity for parole during his lifetime, given appellant's age (24) at the time of sentencing. Thus, we conclude that the additional sentence of 5 to 15 years did result in prejudice to appellant and, accordingly, that the trial court abused its discretion by not granting appellant's motion to withdraw his guilty plea. *See, e.g., Byrd,* 377 A.2d at 405 (where injustice manifest in the record, trial court clearly abused discretion when it denied appellant's post-sentence motion to withdraw guilty plea).

▮ At the same time, however, we conclude that the appellant's rights were not violated, nor did he suffer prejudice, with regard to his guilty pleas to the remaining eight counts in the revised plea package. As we noted above, there is no question that appellant voluntarily, knowingly, and intelligently pleaded guilty to these charges, because the number and

---

6. *Cf. Hicks,* 362 A.2d at 113 (holding in prison breach case that trial court should have made certain defendant understood that sentence imposed upon guilty plea was consecutive to sentence then being served).

7. Despite the prosecutor's misleading statement, based on the record we cannot agree with appellant that the prosecutor "breached his agreement" or acted with "vindictiveness." Although we agree with the government that, factually, the prosecutor would not have changed his original offer but for appellant's refusal to admit to rape under count 33, that does not change the constitutional requirement that all guilty pleas must be entered into intelligently with a full understanding of the consequences.

8. Super.Ct.Crim.R. 11(h), which became effective on September 1, 1985, provides: "*Harmless*

error. Any variance from the procedures required by this *Rule which* does not affect substantial rights shall be disregarded." Technically this amendment does not apply to our review of appellant's case, since his plea hearing took place on May 14, 1984, but even if it did this would not alter our decision, since we conclude that appellant suffered prejudice.

Our dissenting colleague appears to suggest that we should also consider the brutality of appellant's crimes in deciding whether manifest injustice occurred at the plea hearing. *See post* at p. 700 note 2 (SCHWELB, J., dissenting). We know of no authority for that proposition; the process due a felony defendant who waives constitutional rights does not vary inversely in proportion to the severity of the charges.

types of offenses and the range of potential punishment were the same as under the original offer. Furthermore, we agree with the trial court that during the plea proceeding appellant "was completely aware of all of the[ ] circumstances relating to his situation and to the status of the evidence[,] both the government's and his own, and it was because of those circumstances and that evidence, as the defendant said at the time of his pleas, that he entered his pleas of guilty." Memorandum Order at 43. There is no evidence to suggest that appellant was under the influence of any medication or substance during the plea hearing as to impair his ability to participate fully in the proceeding. Appellant engaged in an extensive colloquy with the trial court in which he admitted committing several of the charged offenses and recited numerous background facts and circumstances.

### III.

### A.

"Where the trial court's denial of a Rule 32(e) motion is an abuse of discretion, this court can reverse that decision, or it can order other relief determined to be appropriate." *Goodall*, 584 A.2d at 562 (footnote omitted). In fashioning an appropriate remedy in this case we bear in mind that appellant intelligently entered pleas to the other eight counts of the revised plea package. The errors of defense counsel and the trial court, as well as the misleading comment of the prosecutor in offering the revision, prejudiced appellant insofar as they failed to make it clear/that count 20

was an addition to the original plea package that carried with it an additional mandatory prison term. We also note that it would likely be very difficult for the government to try this case now, over nine years after the date of appellant's admitted and alleged crimes. Thus we seek to create a remedy that will both safeguard appellant's constitutional rights, by protecting his understanding that he was pleading guilty to eight offenses, and conserve prosecutorial and judicial resources, by giving the government the opportunity to hold appellant to his guilty pleas on these eight counts.

With these considerations in mind, we remand this case to the trial court with the following instructions. If the government wishes to do so, it may petition the trial court to vacate appellant's conviction on count 20 and the corresponding 5 to 15 year term given to appellant on that count. In that event, appellant's convictions on the remaining eight counts shall stand.[9]

If the government does not file this petition to vacate appellant's conviction on count 20, then the trial court shall allow appellant to withdraw his guilty plea as to all nine counts and shall vacate his convictions and sentence thereon. In that case the government shall have the option of proceeding to a new trial.

### B.

If the government does petition to vacate appellant's conviction on count 20, the trial court shall not be limited to subtracting the 5 to 15 year term for Count 20 from appellant's sentence. Rather, the trial court may decide, at its discretion, whether to

9. Other courts have similarly allowed the government or the trial court to avoid restarting a case altogether by revising the plea bargain to conform to defendant's understanding of its terms. *See United States v. Young*, 932 F.2d 1035 (2d Cir.1991) (permitting guilty plea to stand as long as government foregoes restitution, where defendant was not told at plea allocution that restitution was a possible penalty); *United States v. Khan*, 869 F.2d 661 (2d Cir. 1989) (allowing deletion of restitution portion of sentence, without requiring vacation of guilty plea and reversal of conviction, in same circumstances), *cert. denied*, 498 U.S. 682, 111 S.Ct. 682, 112 L.Ed.2d 674 (1991); *Strader v. Garri-*

*son*, 611 F.2d 61 (4th Cir.1979) (giving state option of reducing prisoner's sentence on one count where prisoner was erroneously informed that guilty plea would not affect his parole eligibility date); *United States v. Lewis*, 875 F.2d 444 (5th Cir.) (approving district court's reduction of defendant's special parole term to six years, in accord with what court had told defendant at plea hearing), *cert. denied*, 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989); *United States v. Lott*, 630 F.Supp. 611 (E.D.Va.) (deleting improperly imposed restitution order from sentence, thereby reducing counsel's oversight to harmless error and avoiding retrial), *aff'd*, 795 F.2d 82 (4th Cir.1986).

vacate appellant's sentence entirely, and to resentence appellant on the remaining eight counts, so as to realize the intent of its original sentencing plan.

■ In cases where convictions on some but not all counts of a multiple-count indictment are vacated on appeal, this court may remand the case to the trial court for resentencing on the remaining convictions, so as not to "upset an interdependent sentencing structure." *Bean v. United States*, 606 A.2d 770, 772 (D.C.1992) (quoting *Thorne v. United States*, 471 A.2d 247, 249 (D.C.1983)). As long as the total length of the new sentence on the remaining counts does not exceed the total length of appellant's previous sentence on all counts (including those overturned), and there is no other evidence of any retaliatory motive, such resentencing offends neither due process nor the double jeopardy clause. *See Pennsylvania v. Goldhammer*, 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985) (per curiam); *United States v. Pimienta-Redondo*, 874 F.2d 9 (1st Cir.) (en banc), *cert. denied*, 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989); *United States v. Hodges*, 628 F.2d 350 (5th Cir.1980). The rationale for this practice is that, in sentencing, the trial judge takes into account not only the number of actual convictions but also the defendant's conduct and character. As the United States Court of Appeals for the First Circuit observed in *Pimienta-Redondo*:

> Society has a strong interest in ensuring that, in our criminal jurisprudence, punishment "will suit not merely the offense but the individual defendant." ... The myriad of other factors underlying the original sentence in a multiple count case are not necessarily altered when a defendant successfully appeals his conviction on one count. After an appellate court unwraps the package and removes one or more charges from its confines, the sentencing judge, herself, is in the best position to assess the effect of the withdrawal and to redefine the package's size and shape (if, indeed, redefinition seems appropriate).

874 F.2d at 14 (citations omitted) (quoting *Wasman v. United States*, 468 U.S. 559, 564 (1984)).[10]

We note that allowing for such resentencing is not inconsistent with our ruling requiring revision of the plea bargain to conform to appellant's expectations. On the basis of the plea hearing, appellant could have reasonably expected that he would be sentenced on eight convictions, not nine, but he had no basis for expecting that he would receive any particular sentence on those eight convictions, as long as it fell within the statutory guidelines.

Nor is there any inconsistency between our conclusion that appellant was prejudiced by the 5 to 15 year term he received on count 20 and the fact that appellant could conceivably (but not necessarily) be given the same aggregate sentence on the remaining eight counts. Appellant had a right to have the trial court sentence him only upon the eight counts to which he knowingly pled guilty. Accordingly, insofar as the trial court relied on nine counts, including count 20, in determining appellant's original sentence, there is at least a present implication that appellant's aggregate sentence would have been less if imposed on eight counts. Appellant, therefore, is at least prejudiced by the lack of opportunity thus far to receive sentence on only eight, not nine, counts.

*Affirmed in part, reversed in part, and remanded.*

SCHWELB, *Associate Judge*, dissenting:

As my colleagues in the majority acknowledge, Eldridge explicitly concedes in his brief that he is not entitled to prevail either on his motion to withdraw his plea, *see* Super Ct.Crim.R. 32(e), or on his motion to vacate sentence, *see* D.C.Code § 23–110 (1989), unless he is able to demonstrate manifest injustice. *Wilson v. United*

10. The cases on which we rely to permit revision, without withdrawal, of a plea agreement, *see supra* note 9, are not authority, in addition, for revision of the aggregate sentence for convictions under a multiple-count indictment. Those decisions revise the sentence, rather than remand for resentencing, because an aspect of the sentence—typically restitution—is illegal.

*States,* 592 A.2d 1009, 1013 (D.C.1991) (per curiam); *McClurkin v. United States,* 472 A.2d 1348, 1352 (D.C.1984). In my opinion, he has made no such showing.

My colleagues do not deny that Eldridge was duly advised of the offenses of which he would be found guilty under the terms of the revised plea agreement. It is likewise undisputed that he was told of the maximum sentence for each crime to which he was entering a plea, including the crime of burglary (which was the subject of the added charge). Eldridge also expressly admitted that he had committed the burglary which Count 20 addressed. The defect which my colleagues perceive in this proceeding is that Eldridge apparently was not explicitly advised that he was now pleading guilty to nine counts instead of eight, and that his exposure was increased accordingly.

It would no doubt have been preferable if the judge or trial counsel had specifically told Eldridge that the number of counts in the original plea package had been increased in the revised agreement. I cannot agree, however, that the apparent failure so to advise him resulted in manifest injustice. In fact, Eldridge was apparently being offered a pretty good deal, for a large majority of the charges against him were dismissed. His trial counsel apprehended that if his client rejected the revised plea offer, he might be convicted of all thirty-seven counts. The attorney was also concerned that the government might learn of still further rapes and burglaries. Imprisonment for the rest of Eldridge's life could thus become a virtual certainty, rather than a possibility.

The increase in Eldridge's potential sentencing exposure occasioned by the revised plea agreement was more theoretical than real. Under the original package, Eldridge was to plead guilty to two rape-related charges, each carrying a maximum sentence of life imprisonment, as well as to six other charges; considering all eight counts, he could have received sentences totalling fifty-five years to life. In other words, even before the ninth count was added, the judge could have kept Eldridge under lock and key for most of the remainder of his life. After Eldridge entered a plea to Count 20, all but nine of the thirty-seven counts were dismissed, and Eldridge's exposure was only marginally different under the revised plea agreement.[1] Moreover, the sentence imposed by the judge was substantially less than the maximum which he could have imposed under the original eight-count plea agreement.

Eldridge knowingly and voluntarily entered pleas of guilty to the commission of brutal, armed, and in most cases sex-related crimes against five different women.[2] It was he who initially failed to go through with the previously negotiated plea agreement. Under these circumstances, I discern no injustice, manifest or otherwise, in the trial judge's resolution of the case. Accordingly, I respectfully dissent.

---

1. This may have been what the prosecutor meant when he referred to the changes in the plea agreement as "slight." It is true that Eldridge was sentenced to serve no less than five years and no more than fifteen on Count 20, which was not part of the original package. We do not know, however, whether the same sentences would have been imposed on the other counts under the original package; the judge "may have chosen to spread the aggregate sentence over all of the counts." *Bean v. United States,* 606 A.2d 770, 772 (D.C.1992) (per curiam).

2. My colleagues do not discuss the facts of the crimes which Eldridge committed. Briefly, ac-

cording to the prosecution's proffers, almost all of which he conceded to be accurate, Eldridge raped and robbed two victims in separate incidents; choked a third woman and beat her about the head and breasts, intending to rape her; choked and punched a fourth woman; and burglarized the apartment of a fifth woman after swinging a chair at her, pulling her sweater over her head, and removing her jewelry. With due respect to my colleagues, I do not understand how the severity and depravity of Eldridge's crimes could be irrelevant to the question whether the sentence resulting from the perceived defect in the trial court's proceedings was "manifestly unjust."