**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CLINTON T. ELDRIDGE,

     Petitioner - Appellant,

v.

D. BERKEBILE,

     Respondent - Appellee.

No. 15-1053

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:14-CV-02334-RM-BNB)**
_____

Submitted on the briefs:[*]

Clinton T. Eldridge, pro se.

Paul Farley, Assistant United States Attorney, and John F. Walsh, United States Attorney, Office of the United States Attorney, Denver, Colorado, for Respondent-Appellee.

_____

Before **MATHESON**, **MURPHY**, and **PHILLIPS**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Clinton Eldridge pleaded guilty in the District of Columbia Superior Court[1] to various violent felonies and is incarcerated in a federal prison. He appeals the district court's denial of his habeas petition that he filed under 28 U.S.C. § 2241. In his petition, and now on appeal, Eldridge contends that the Bureau of Prisons (BOP) incorrectly computed his sentence by not crediting all of his time served from his original sentencing hearing through his resentencing, a period of nearly nine years. He also contends that the district court failed to address his arguments concerning credit for time he served from his arrest to his original sentencing (235 days) and for time he served after his parole (for an earlier crime) was revoked (61 days).

Because Eldridge was convicted and sentenced in the District of Columbia Superior Court, a court of general jurisdiction separate from the United States District Court for the District of Columbia, it is not obvious whether he is a federal or state prisoner. Under 28 U.S.C. § 2253(c)(1), if Eldridge is a state prisoner, he must obtain a Certificate of Appealability (COA) before he can appeal. If he is a federal prisoner, he does not need a COA to appeal a final judgment in a § 2241 case.

We conclude that Eldridge is a state prisoner for purposes of § 2253(c)(1) and that he must obtain a COA to proceed on appeal. We further conclude that Eldridge has not met the necessary showing to obtain a COA. Accordingly, we DENY a COA and DISMISS this appeal.

---

[1] As we later explain, this court is a trial court of general jurisdiction separate from the federal courts.

2

BACKGROUND

In 1981, Eldridge, while a juvenile, committed an offense for which he received a sentence under the Youth Corrections Act (YCA), 18 U.S.C. § 5005 et seq. (repealed 1984). On March 7, 1983, Eldridge was released on parole under the YCA. Eldridge lived in Washington D.C. while on parole. On November 18, 1983, while he was still on YCA parole for his juvenile crimes, D.C. police arrested him for different crimes he committed as an adult. These more serious crimes included rape, robbery, and burglary. *See Eldridge v. Berkebile*, 526 F. App'x 897, 898–99 (10th Cir. 2013) (unpublished). Eldridge remained in custody following his arrest and while pending trial.

On November 23, 1983, the District of Columbia Board of Parole issued a warrant to revoke Eldridge's YCA parole. In May 1984, Eldridge pleaded guilty in the District of Columbia Superior Court to several of his adult felony charges. *Eldridge v. United States*, 618 A.2d 690, 693 (D.C. 1992). Because his adult charges violated the terms of his juvenile parole conditions, on July 10, 1984, the District of Columbia parole board executed the parole-violation warrant against Eldridge, who began serving his juvenile-parole sentence that same day.

On July 19, 1984, the D.C. Superior Court sentenced Eldridge to consecutive prison terms totaling 40 to 120 years for his adult convictions. Because the Superior Court imposed consecutive sentences on the individual convictions, it did not matter in which order Eldridge serves them. *See* D.C. Code § 24-404 (requiring a defendant to serve "the minimum sentence imposed or the prescribed portion of [his] sentence" before he is eligible for parole). Perhaps because neither party had addressed it, the Superior Court

3

did not state in which order Eldridge was to complete the consecutive prison terms of his adult sentence. On September 10, 1984, likely because of his adult convictions, the D.C. parole board granted an administrative parole (as opposed to parole for good behavior) to Eldridge. Still confined, of course, Eldridge then instead began to serve his 40-to-120 year adult sentence that same day.[2]

Eldridge appealed his adult convictions, and the District of Columbia Court of Appeals vacated his conviction on Count 20, a first-degree burglary charge. *Eldridge*, 618 A.2d at 696–97. It found that the parties had agreed at the last minute to a different plea package (adding Count 20) and that defense counsel had not adequately informed Eldridge that a guilty plea on that count would result in a higher total sentence because it carried a separate five-year mandatory-minimum sentence. *Id.* Nevertheless, that court affirmed Eldridge's remaining convictions, noting that Eldridge's plea statements established his having committed the burglary and forcible rape of "Complainant W" (Counts 20 and 24). *Id.* at 698.

On July 20, 1993, the trial judge resentenced Eldridge to the same aggregate, consecutive prison term of 40 to 120 years on the remaining eight counts affirmed on appeal. The trial court reached the same aggregate sentence by increasing the sentence on one of the remaining counts, Count 24 (a rape charge) from 10–30 years to 15–45 years. It did so knowing that Eldridge otherwise would escape punishment for the burglary

---

[2] The BOP computed Eldridge's adult sentence with a start date of September 10, 1984. It has credited Eldridge's adult sentence with an additional 235 days that Eldridge spent in presentence confinement, from November 18, 1983 (his arrest) to July 9, 1984 (the day before the D.C. Parole Board revoked his juvenile parole).

enabling him to commit the rape (Counts 20 and 24). The Superior Court did not state if Eldridge had to serve the consecutive prison terms in a different order from the originally-imposed sentence.

Except for the time Eldridge had served for his juvenile parole-violation sentence (July 10, 1984 to September 10, 1984), the BOP credited to Eldridge's adult sentence all time he had served before his 1993 resentencing. In this regard, the BOP noted that—notwithstanding the remand and resentencing—Eldridge had begun serving his adult sentence on September 10, 1984, the day when Eldridge received his administrative parole from the juvenile sentence, effectively ending the juvenile case. In short, the BOP counted all time after September 10, 1984 towards Eldridge's 40 to 120-year sentence. Additionally, the BOP credited 235 days to Eldridge's adult sentence for the time he spent in presentence custody from November 18, 1983 (the date of his arrest) to July 9, 1984 (the day before Eldridge started serving his juvenile parole-violation sentence).

Eldridge filed a habeas petition under 28 U.S.C. § 2241, claiming that the BOP had not credited against his adult sentence any of the time he served between July 19, 1984 (the date of his original sentencing) and July 20, 1993 (the date of his resentencing). *Eldridge*, 526 F. App'x at 898. He argued that the BOP had improperly failed to credit to his adult sentence the time he served between the original sentencing in 1984 and resentencing in 1993. *See id.* We affirmed the district court's dismissal based on Eldridge's failure to exhaust administrative remedies. *Id.* at 899.

After exhausting his administrative remedies, Eldridge filed another § 2241 habeas petition. Again, we affirmed the district court's dismissal because, although Eldridge had

5

started the administrative-review process, he still had not yet exhausted all administrative appeals. *See Eldridge v. Berkebile*, 576 F. App'x 746, 748 (10th Cir. 2014) (unpublished). Nine days later, Eldridge filed a third § 2241 petition—the one now at issue. Again, Eldridge argued that the BOP had failed to credit his adult sentence for the time he had served between 1984 and 1993. He also contended that the trial court had violated his due process rights by resentencing him to a longer prison term on Count 24 in order to achieve the same 40-to-120 year sentence.

The district court denied relief. As noted above, we agree with the district court that the BOP properly attributed Eldridge's earlier-served time between his juvenile and adult sentences. In other words, the district court found that the BOP properly credited Eldridge's adult sentence for the period of November 18, 1983 (his arrest) to July 9, 1984 (the date of his juvenile-parole revocation) and all time after September 10, 1984, the end of his juvenile sentence and the start of his adult sentence. It further concluded that Eldridge's sentence did not violate either the Due Process or Double Jeopardy Clauses. Finally, the district court also denied Eldridge's request for a COA.[3]

---

[3] After entering its order, Eldridge filed another request for a COA, which the district court denied in a minute order.

DISCUSSION[4]

**A. Eldridge's Status**

The first question we must address is whether Eldridge is a federal or state prisoner. The distinction is significant: if Eldridge is a state prisoner, he must first obtain a COA to proceed on appeal. *See* 28 U.S.C. § 2253(c)(1) (stating that a COA is required for an appeal of "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court"); *Montez v. McKenna*, 208 F.3d 862, 869 (10th Cir. 2000) (requiring a COA for challenges "related to the incidents and circumstances of any detention pursuant to state court process under § 2241"). If Eldridge is a federal prisoner, he does not need a COA to appeal. *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 810 n.1 (10th Cir. 1997) (stating that federal prisoners do not need to seek a COA before appealing a final order in a proceeding under 28 U.S.C. § 2241).

Warden Berkebile argues that Eldridge is a "state prisoner" under § 2253. We agree. In 1970, Congress created in the District of Columbia a trial and appellate court system of general jurisdiction separate from the federal courts. *See* 84 Stat. 475, Pub. L. No. 91-358, title I, §111 (1970); D.C. Code § 11-101. *See also Palmore v. United States*, 411 U.S. 389, 392 n.2 (1973) (noting that Congress invested in the new courts "with jurisdiction equivalent to that exercised by state courts"). In addition, in separate statutes,

---

[4] Eldridge is a pro se litigant, so we view his filings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But we will not serve as Eldridge's attorney in constructing arguments and searching the record. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Congress has also specified that the Superior Court and the D.C. Court of Appeals shall be deemed state courts for certain purposes, including certiorari, 28 U.S.C. § 1257(b); removal, 28 U.S.C. § 1451; and diversity jurisdiction, 28 U.S.C. § 1332(e).

In treating Eldridge as a state prisoner in determining his rights to seek habeas relief under 28 U.S.C. § 2241, we find persuasive the reasoning of *Madley v. U.S. Parole Comm'n*, 278 F.3d 1306, 1308–10 (D.C. Cir. 2002). In *Madley*, the D.C. Circuit concluded that the appellant was a state prisoner for habeas purposes because his conviction and sentence arose in the District of Columbia Superior Court, which it deemed a state court for habeas purposes.[5] 278 F.3d at 1308–10. Because Madley's sentence arose from a state court process, the panel required him to obtain a COA before proceeding on appeal. *Id.* at 1309–10. Here, Eldridge's sentence also arose in the District of Columbia Superior Court. We agree with *Madley*'s reasoning and hold that Eldridge is a state prisoner whose detention originated in a state court process. *See id.* at 1310; *see also Johnson v. Clay*, 539 F. App'x 748, 748–49 (9th Cir. 2013) (unpublished); *Terry v. Deeboo*, 473 F. App'x 282, 283 (4th Cir. 2012) (unpublished); *Wilson v. U.S. Parole Comm'n*, 652 F.3d 348, 351–52 (3d Cir. 2011). Therefore, we hold that he must obtain a COA before proceeding on appeal. *See Madley*, 278 F.3d at 1310; *see also Montez*, 208 F.3d at 869.

---

[5] The panel reached this conclusion even though Congress had not explicitly designated the Superior Court as a state court anywhere in §§ 2241–2255. *See Madley*, 278 F.3d at 1308–10.

**B. Certificate of Appealability**

To obtain a COA, Eldridge must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing requires Eldridge to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). We conclude that Eldridge has not made that showing. To reach this conclusion, we undertake "a preliminary, though not definitive, consideration of the [legal] framework" applicable to Eldridge's claims. *Id.* at 338.

First, Eldridge argues that he was denied due process, arguing that he did not receive credit on his adult sentence for the time he served between his sentencing and resentencing hearings. As established above, Eldridge is mistaken. As the district court correctly noted, the BOP credited Eldridge's adult sentence for all time served after his felony arrest except that attributable to another sentence, namely, his juvenile-revocation incarceration. Warden Berkebile provided supporting evidence on this point, and Eldridge has shown nothing to the contrary. Accordingly, no reasonable jurist could dispute the district court's denial of this claim.

Second, Eldridge contends that the district court erred by stating that "[t]he Superior Court's Order in 1993 did not indicate that the new sentence was to be served in a different sequence or manner than the sentence as originally imposed in 1984." R. vol. I at 169. This argument lacks merit. The district court's statement is correct. In addition, the district court imposed consecutive sentences so it makes no difference in which order

9

Eldridge serves them. Further, the order in which a prisoner serves a consecutive sentence is a matter of state law and does "not raise federal issues cognizable on federal habeas review." *Apodaca v. Ferguson*, 125 F.3d 861, 1997 WL 618712, at \*1 (10th Cir. Oct. 6, 1997) (unpublished) (citing *Bloyer v. Peters*, 5 F.3d 1093, 1100 (7th Cir. 1993) and *Handley v. Page*, 398 F.2d 351, 352 (10th Cir. 1968)).

Third, as previously discussed, Eldridge argues that the district court erred when it failed to address or credit his adult sentence for (i) his presentence custody between November 18, 1983 (the adult-arrest date) and July 9, 1984 (the day before his juvenile-parole revocation), and (ii) his presentence custody between July 10, 1984 (the parole revocation and resumption of his juvenile sentence) and September 10, 1984. He contends that *United States v. Wilson*, 503 U.S. 329, 332 (1992), required the district court to grant credit for both periods of time towards his adult sentence. To the contrary, we agree with the district court that the BOP *did* credit Eldridge's adult sentence for the 235 days of presentence custody. We also agree that Eldridge cannot receive credit for the time he served towards his juvenile sentence (from July 10, 1984 to September 10, 1984). *See Wilson*, 503 U.S. at 332; 18 U.S.C. § 3585(b).

Fourth, Eldridge argues that the D.C. Superior Court's resentencing violated his double jeopardy rights. In support, Eldridge argues that *North Carolina v. Pearce*, 395 U.S. 711, 718–19 (1969) (*overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)), prohibited the Superior Court from increasing the sentence on one count to impose an identical aggregate sentence. In *Pearce*, the Supreme Court held that "neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to

10

a more severe sentence upon reconviction." 395 U.S. at 723. Eldridge forgets one important detail: the trial judge imposed the same aggregate sentence (and not a higher sentence) from the original sentencing hearing. Eldridge cannot substantially show the denial of a constitutional right.

Eldridge also argues that, by "unbundling" his "plea package" and increasing the sentence on one count (Count 24) at resentencing, the Superior Court violated his double-jeopardy rights, imposing a multiple punishment for the same offense. *See Pearce*, 395 U.S. at 717. To succeed in this argument, Eldridge must show that he has some legitimate expectation of finality in his original sentence. *United States v. Welch*, 928 F.2d 915, 916 (10th Cir. 1991). We agree with the district court that Eldridge could have no such expectation. When a defendant challenges his sentence on appeal, he can have no expectation of finality in his sentence. *See Welch*, 928 F.2d at 916–17. Although Eldridge successfully appealed one count (Count 20), the Double Jeopardy Clause did not bar resentencing on the remaining counts and did not bar a greater (or lesser) sentence.[6] *Id.* at 917. Reasonable jurists could not conclude that the district court erred in rejecting this claim.

In his final argument, Eldridge contends that the Superior Court's increasing of his sentence on remand violated his right to due process under *Pearce*. Eldridge argues that *Pearce* required the Superior Court to state its reasons on the record before on remand

---

[6] We also agree with the district court that the Double Jeopardy Clause did not bar resentencing on the remaining counts to which Eldridge pleaded guilty because resentencing did not violate any statutory maximum and effectuated the Superior Court's original sentencing intent. *See Welch*, 928 F.2d at 917.

11

increasing his sentence on one count. He also contends that the Superior Court did not state any reasons for increasing the sentence for one count on remand. Accordingly, Eldridge asserts, we should presume that the trial judge acted vindictively in increasing the sentence to punish Eldridge for a successful appeal. *See Pearce*, 395 U.S. at 726. Eldridge runs into a problem: the Supreme Court has narrowed *Pearce* considerably. *See Smith*, 490 U.S. at 799–800; *United States v. Medley*, 476 F.3d 835, 839 (10th Cir. 2006) (stating that *Smith* "reduced the *Pearce* doctrine to its essential core" and noting that *Smith* held "that the defendant has the burden 'to prove that actual vindictiveness'"). Instead, the presumption applies when there is a "'reasonable likelihood' . . . that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Smith*, 490 U.S. at 799 (citation omitted). Absent this, the defendant must prove actual vindictiveness. *Id.* Here, Eldridge cannot meet this burden. The trial judge stated why he increased the sentence on Count 24: upon Count 20's dismissal (the first-degree burglary), Eldridge would escape punishment for the offense so instrumental to his forcible rape immediately following it. Eldridge has no constitutional right to have his burglary conduct ignored. *See Foster v. United States*, 615 A.2d 213, 220 (D.C. 1992) ("A trial judge generally may consider information from a wide variety of sources in evaluating the appropriate sentence for a defendant.") (citing *Williams v. New York*, 337 U.S. 241, 250 (1949)). The D.C. Court of Appeals noted that these two charges involved the same victim. *See Eldridge*, 618 A.2d at 694 (noting that Count 24 was the "rape of [Complainant 'W']" and that Count 20 was burglary "with respect to the home of

12

[Complainant W]"). Eldridge acknowledged this in his briefing before the district court. Eldridge cannot substantially show the denial of a constitutional right.

CONCLUSION

We hold that Eldridge is a state prisoner for purposes of 28 U.S.C. § 2253, and he must obtain a COA to proceed on appeal. We conclude that Eldridge has not made the requisite showing for a COA. We DENY a COA and DISMISS this appeal. We also DENY Eldridge's motion to proceed *in forma pauperis* as moot.