**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MALIK SMITH,

        Petitioner-Appellant,

v.

WARDEN OLIVER,

        Respondent-Appellee.

No. 14-1369
(D.C. No. 1:13-CV-03122-CMA)
(D. Colo.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **GORSUCH**, **MURPHY**, and **HOLMES**, Circuit Judges.

Pro se prisoner[1] Malik Smith, who is presently incarcerated in a federal

correctional institution, appeals from the district court's denial of his application

for a writ of habeas corpus under 28 U.S.C. § 2241.  We have jurisdiction under

28 U.S.C. § 1291.

---

[*]     This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1]     We liberally construe Mr. Smith's pro se filings, *see Curtis v. Chester*, 626 F.3d 540, 543 n.1 (10th Cir. 2010), but we do not assume the role of his advocate, *see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

As discussed below, a very recent significant development in our jurisprudence guides our resolution of this appeal. On June 30, 2015, in *Eldridge v. Berkebile*, --- F.3d ----, 2015 WL 3953701, at *1 (10th Cir. 2015), we held that a prisoner similarly situated to Mr. Smith—i.e., one sentenced by the District of Columbia Superior Court ("Superior Court"), but housed in a federal penal institution at the time that he filed his § 2241 application—must obtain a certificate of appealability ("COA") in order to pursue a § 2241 challenge in this court to the BOP's computation of his term of imprisonment. In light of *Eldridge*, exercising our discretion, we construe Mr. Smith's appellate filing as a request for a COA. So construed, we **deny** Mr. Smith's request for a COA, **deny** his motion to proceed *in forma pauperis* ("IFP"), and **dismiss** this appeal.

## I

After a jury trial, Mr. Smith was convicted on Counts "H" through "T" of a multi-count indictment in the Superior Court. In 1998, the Superior Court imposed the following prison sentence: (1) ten to thirty years for assault with intent to commit robbery while armed (Counts H and J); (2) five to fifteen years for possessing a firearm during a crime of violence (Counts I, K, M, O, Q, and S); (3) fifteen years to life for assault with intent to kill while armed (Counts L and N); (4) five to fifteen years for aggravated assault while armed (Counts P and R); and (5) twenty to sixty months for carrying a pistol without a license (Count T).

2

In an order memorializing the judgment of conviction and Mr. Smith's

sentence (the "Commitment Order"), the Superior Court instructed that:

> [c]ounts H, J, L, N, P [and] R are to run concurrent to each other; counts I, M, Q concurrent to each other, but consecutive to counts H, J, L, N, P [and] R; counts K, O, S are to run concurrent to each other, but . . . consecutive to counts I, M, Q; [and] count T is to run consecutive to counts H through S[.]

R. at 83–84 (Commitment Order, dated Feb. 12, 1998).

Mr. Smith received 336 days of pre-sentence jail credit: from March 13,

1997, to February 11, 1998. He began serving his sentence on February 12, 1998.

The District of Columbia Department of Corrections determined at that point that

he would become eligible for parole on November 10, 2023.

While fulfilling his sentence, Mr. Smith was transferred into the custody of

the Federal Bureau of Prisons ("BOP") pursuant to the National Capital

Revitalization and Self-Government Improvement Act of 1997 ("National Capital

Act").[2] The BOP reviewed the sentence that the Superior Court imposed upon

Mr. Smith and computed (1) a total minimum term of twenty-five years and

twenty months in prison; (2) a maximum term of life imprisonment; and (3) a

2023 parole eligibility date. Thereafter, in 2004, the Superior Court vacated Mr.

---

[2] *See* Pub. L. No. 105-33, § 11201(a), 111 Stat. 251 (1997) ("[A]ny person who has been sentenced to incarceration pursuant to the District of Columbia Code . . . shall be designated by the Bureau of Prisons to a penal or correctional facility operated or contracted for by the Bureau of Prisons . . . ."); *see also Taylor v. Reilly*, 685 F.3d 1110, 1111 (D.C. Cir. 2012) (noting that "Congress brought the D.C. parole system under the jurisdiction of the U.S. Parole Commission" through the National Capital Act).

3

Smith's convictions and sentences as to Counts K, Q, and S. The court's vacatur as regards these three counts had no practical effect on Mr. Smith's computed minimum term of imprisonment of twenty-five years and twenty months.

In May 2013—fifteen years after the commencement of his sentence—Mr. Smith filed an administrative grievance seeking "mandatory release from BOP custody" based upon his view that his sentence "c[ould] not exceed 15 years." *Id.* at 36 (Informal Resolution Form, dated May 5, 2013). This initial administrative effort proved unsuccessful. Mr. Smith continued his pursuit of redress in accordance with the BOP's four-step administrative-remedy process for federal inmates. At the final level of administrative review, Mr. Smith did not receive a response from the BOP's Office of General Counsel within the time that the controlling regulations allotted for such a response; those regulations appeared to authorize Mr. Smith to "consider the absence of a response to be a denial at that level."[3] 28 C.F.R. § 542.18.

---

[3] A panel of this court has explained the BOP's administrative-grievance process as follows:

> First, an inmate must attempt to informally resolve a complaint by filing a BP-8 form. Second, if still dissatisfied, an inmate must submit a formal request for administrative remedy by filing a form BP-9. Third, an inmate must appeal the step-two decision by filing a BP-10 with the Regional Director. Finally, an inmate must appeal the Regional Director's response by filing a BP-11 with the General Counsel (Central Office). "Appeal to the General Counsel is the final administrative appeal." An inmate has not exhausted his administrative remedies until completing

(continued...)

4

Mr. Smith filed an application for a writ of habeas corpus in the United States District Court for the District of Colorado on November 15, 2013, alleging that the BOP miscalculated his sentence and that he was eligible for immediate release from custody or, alternatively, a parole hearing. At that time, he was incarcerated at the United States Penitentiary in Florence, Colorado. In December 2013, he filed a notice of address change to apprise the district court of his transfer to a federal facility in Adelanto, California. Notwithstanding this change of residence, the district court properly retained jurisdiction over the matter. Because Mr. Smith's petition purported to "attack[] the execution of a sentence rather than its validity . . . [, it had to] be filed in the district where [he] [wa]s confined" at the time of filing. *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (quoting *Haugh v. Booker*, 210 F.3d 1147, 1149 (10th Cir. 2000)); *see id.* at 811 (explaining, in a § 2241 case, that "[b]ecause [the petitioner] was imprisoned in USP-Leavenworth[, Kansas,] when he filed his petition, the District Court for the District of Kansas properly exercised

---

[3](...continued)
each of these steps.

*Eldridge v. Berkebile*, 576 F. App'x 746, 747 (10th Cir. 2014) (citations omitted) (quoting 28 C.F.R. § 542.15). "The exhaustion requirement [for § 2241 petitions] is not jurisdictional . . . and may be waived by the [government]." *Clayton v. Gibson*, 199 F.3d 1162, 1170 (10th Cir. 1999). The government does not question on appeal whether Mr. Smith has exhausted his administrative remedies. Therefore, insofar as any argument could be presented regarding a failure of exhaustion, the government has waived it.

jurisdiction" over the action even though "the underlying events took place at USP-Florence[, Colorado]").

On July 14, 2014, in a well-reasoned order, the district court determined that Mr. Smith had failed to demonstrate that the BOP incorrectly computed his sentence or parole-eligibility date. The court proceeded to deny Mr. Smith's habeas application on the merits, and it dismissed the action with prejudice. Mr. Smith has timely appealed.

**II**

**A**

A challenge to the BOP's calculation of a prison sentence is properly brought under 28 U.S.C. § 2241. *See Walker v. United States*, 680 F.3d 1205, 1205 (10th Cir. 2012); *Rhodes v. Judiscak*, 676 F.3d 931, 932–33 (10th Cir. 2012). In determining whether the district court erred in dismissing Mr. Smith's habeas application and rejecting his averments of miscalculation, we review the legal elements of the court's decision de novo. *See, e.g.*, *Brace v. United States*, 634 F.3d 1167, 1169 (10th Cir. 2011); *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010). We review any factual findings for clear error. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012); *Standifer v. Ledezma*, 653 F.3d 1276, 1278 (10th Cir. 2011).

**B**

As our recent caselaw illuminates, Mr. Smith must successfully obtain a COA before we may resolve the merits of his appeal from the district court's § 2241 order. *See Eldridge*, 2015 WL 3953701, at *3. *Eldridge* guides our resolution of this appeal insofar as it dictates the proper method by which prisoners in federal custody by virtue of the National Capital Act must mount § 2241 challenges. In that case, as here, the petitioner was convicted in and sentenced by the Superior Court—which, as we explained, is "a court of general jurisdiction separate from the United States District Court for the District of Columbia." *Eldridge*, 2015 WL 3953701, at *1. Years later, while incarcerated in a federal prison in Florence, Colorado, he sought to challenge the BOP's computation of his Superior Court sentence by filing a pro se § 2241 petition. *See Eldridge v. Berkebile*, No. 14-cv-02334-RM-BNB, 2015 WL 222664, at *1 (D. Colo. Jan. 15, 2015). The district court discerned no error in the BOP's calculation and thus denied Mr. Eldridge's habeas application on the merits.

On appeal, we concluded at the outset that we must "address . . . whether [he] is a federal or state prisoner. The distinction is significant: if [he] is a state prisoner, he must first obtain a COA to proceed on appeal." *Eldridge*, 2015 WL 3953701, at *3. Guided by the D.C. Circuit's treatment of prisoners similarly situated to Mr. Eldridge in *Madley v. U.S. Parole Commission*, 278 F.3d 1306 (D.C. Cir. 2002), we held that the appropriate and prudent course was to "treat[ ]

7

[Mr.] Eldridge as a state prisoner in determining his rights to seek habeas relief under 28 U.S.C. § 2241." *Eldridge*, 2015 WL 3953701, at *3. Accordingly, we concluded that he was required to procure a COA before proceeding on appeal. *See id.*

The rule of *Eldridge* now constitutes binding precedent. Applying that rule here, we conclude that Mr. Smith, too, must obtain a COA in order to pursue his § 2241 challenge on appeal. And, in the exercise of our discretion, we construe Mr. Smith's appellate filing as a request for a COA to appeal from the district court's ruling.

A COA is appropriately granted only where an applicant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *accord Woodward v. Cline*, 693 F.3d 1289, 1292 (10th Cir. 2012). To make such a showing, Mr. Smith "must demonstrate 'that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Allen v. Zavaras*, 568 F.3d 1197, 1199 (10th Cir. 2009) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly, we "undertake 'a preliminary, though not definitive, consideration of the [legal] framework' applicable to [Mr. Smith's] claims." *Eldridge*, 2015 WL 3953701, at *4 (first alteration in original) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003)). We perceive Mr. Smith to be asserting

that the BOP's alleged miscalculation of his sentence effected a denial of his constitutional right to due process—*viz.*, we understand him to argue that the BOP's purported computational error has caused him to serve a longer prison sentence than necessary, thus depriving him of liberty. *See id.* (addressing petitioner's claim that he was "denied due process" because the BOP did not "credit . . . his adult sentence for the time he served between his sentencing and resentencing hearings").[4] We conclude, however, that Mr. Smith has failed to make the requisite substantial showing of the denial of a constitutional right. He is consequently not entitled to a COA.

## C

To reprise, we understand Mr. Smith to be advancing the argument that, because the BOP miscalculated his sentence, he has been incarcerated longer than the period of time authorized by statute. We find no error by the BOP in this regard. Accordingly, it follows ineluctably that the BOP's computation of Mr. Smith's sentence effected no undue deprivation of liberty. Mr. Smith therefore

---

[4] We interpret Mr. Smith's appellate arguments with an extra measure of liberality in light of the recent change to our caselaw (i.e., *Eldridge*'s requirement that prisoners similarly situated to Mr. Smith must obtain a COA before mounting § 2241 challenges in this court). Mr. Smith was not on notice that he was obliged to seek a COA from this court. However, *Eldridge* indicates that § 2241 challenges, like his, to the BOP's sentencing computation may properly be viewed as alleging an infringement of due-process rights. Therefore, under the COA rubric, we proceed to determine whether Mr. Smith can make a substantial showing of a denial of those rights.

cannot be said to have made a substantial showing of a denial of his due-process rights.

In his habeas application, Mr. Smith argues that the BOP should have determined that his minimum term of imprisonment, under D.C. Code § 24-403(a), was fifteen years. That statute provides, in relevant part, that:

> in imposing sentence on a person convicted in the District of Columbia of a felony, the justice or judge of the court imposing such sentence shall sentence the person for a maximum period not exceeding the maximum fixed by law, and for a minimum period not exceeding one-third of the maximum sentence imposed, and any person so convicted and sentenced may be released on parole as herein provided at any time after having served the minimum sentence. Where the maximum sentence imposed is life imprisonment, a minimum sentence shall be imposed which shall not exceed 15 years imprisonment.

D.C. Code § 24-403(a). Accordingly, by the statute's own terms, a sentence imposed thereunder must state the minimum and maximum term ascribable to the defendant.

As regards Mr. Smith, the Commitment Order clearly designates each of the groups of charges on which he was convicted and, for each group, states an authorized minimum and maximum period of imprisonment under the D.C. Code. Notably, for Counts L and N, the Commitment Order indicates that life imprisonment is the maximum potential sentence germane to these convictions. And the Commitment Order further indicates that the Superior Court—in accordance with the applicable statute, D.C. Code § 24-403(a)—sentenced Mr.

10

Smith to the highest authorized minimum period of imprisonment: fifteen years.

Viewing the plain terms of this statute and the Commitment Order, the BOP found

in its computations that "counts L[] and N . . . carried a 15 year mandatory

minimum term for the 15 years to life sentence." R. at 76 (Decl. of J.R. Johnson,

BOP Corr. Programs Specialist, dated Feb. 14, 2014).

With the foregoing in mind, and mindful that Counts K, Q, and S must be

excised from the Commitment Order because the Superior Court vacated them,

the calculation of Mr. Smith's sentence is fairly straightforward:

|  | **Counts** | **Term of Imprisonment** |
|---|---|---|
| Sentence 1 | H, J | 10–30 years |
| Sentence 2 | I, M, O | 5–15 years |
| Sentence 3 | L, N | 15 years–Life |
| Sentence 4 | P, R | 5–15 years |
| Sentence 5 | T | 20–60 months |

Then, heeding the Commitment Order's instructions regarding the ordering

of these sentences, the proper computation is as follows:

|  | **Counts** | **Minimum Term of Imprisonment** |
|---|---|---|
| Sentences 1, 3, and 4 (Counts H, J, L, N, P, and R to run concurrent to each other) | H, J (minimum 10 years) L, N (minimum 15 years) P, R (minimum 5 years) | 15 years |

| | | |
|---|---|---|
| Sentence 2 (Counts I and M concurrent to each other, but consecutive to Counts H, J, L, N, P, and R) | I, M | 5 years |
| Sentence 2 (Count O consecutive to Counts I and M) | O | 5 years |
| Sentence 5 (Count T consecutive to Counts H through R) | T | 20–60 months |
| **TOTAL MINIMUM SENTENCE** | | **25 years + 20 months** |

As the district court accurately observed, "[t]here is no way around it; . . . [Mr. Smith's total minimum sentence] equals 25 years and 20 months." R. at 113 (Order, filed July 14, 2014). And Mr. Smith's briefing offers us no legally cognizable reason to reach a different conclusion.

In particular, Mr. Smith can be heard to argue that "[sentences for] multiple convictions [under the D.C. Code] . . . cannot be aggregated." Aplt. Opening Br. at 4. Mr. Smith contends that the proper course is to bypass the Superior Court's directive of consecutive sentences, thereby effectively only imposing the sentence pertaining to his assault-with-intent-to-kill conviction: a minimum term of fifteen years' imprisonment, and a maximum term of life imprisonment. But his proposed approach is patently misguided. "It is well-established that courts may constitutionally impose consecutive sentences for completely distinct and separate

12

offenses." *Woodberry v. Hannigan*, 37 F. App'x 404, 406 (10th Cir. 2002); *see United States v. Grassie*, 237 F.3d 1199, 1205, 1216 (10th Cir. 2001) (affirming consecutive sentences that produced an aggregate term of imprisonment exceeding the statutory minimum for one of the defendant's counts of conviction).

As applied here, the Commitment Order clearly indicates that Mr. Smith was *not* sentenced merely on one count, reflecting only one crime, that allowed for a mandatory minimum term of fifteen years. To the contrary, the Superior Court sentenced him on numerous counts pertaining to discrete offenses—and, on these counts, the court imposed correspondingly separate minimum imprisonment terms, which were to run in a particular sequence that the Superior Court set in the exercise of its discretion. The BOP thus committed no error when it concluded that (1) Mr. Smith was sentenced to serve a term of at least fifteen years, to be followed by two five-year terms, and then followed by a twenty-month term; and (2) with said terms aggregated, the Commitment Order required a minimum sentence of twenty-five years and twenty months in prison—not a minimum sentence of fifteen years. And the district court likewise did not err in concluding that, given this proper computation, Mr. Smith was not entitled to habeas relief.

In sum, for the reasons discussed above, we conclude that reasonable jurists could not debate the correctness of the district court's ruling regarding the calculation of Mr. Smith's sentence. We thus conclude that Mr. Smith has failed

13

to make a substantial showing of the denial of a constitutional right—as relevant here, his right to due process. As a result, he is not entitled to a COA to challenge on appeal the district court's disposition of his habeas application. Mr. Smith's request for a COA is hereby denied, and this action is dismissed.

## D

Finally, we address Mr. Smith's motion for leave to proceed IFP. We conclude that Mr. Smith, by limiting his briefing to bald averments that his sentence is "clearly" incorrect, Aplt. Opening Br. at 4, has not offered any "reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal," *Watkins v. Leyba*, 543 F.3d 624, 627 (10th Cir. 2008) (quoting *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997)). As a result, we conclude that he is not entitled to IFP status on appeal, and we deny his motion.

## III

For the reasons discussed above, we **DENY** a COA, **DENY** Mr. Smith's request to proceed IFP, and **DISMISS** this appeal.

Entered for the Court

JEROME A. HOLMES
Circuit Judge

14