FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 28, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

SEAN HARRIS,

     Petitioner - Appellant,

v.

WARDEN, FCI - Leavenworth,

     Respondent - Appellee.

No. 25-3086
(D.C. No. 5:25-CV-03006-JWL)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Sean Harris is a federal prisoner in the custody of the Bureau of Prisons

("BOP") at FCI Leavenworth in Kansas. Proceeding pro se,[1] Mr. Harris appeals from

the district court's denial of habeas relief under 28 U.S.C. § 2241. His petition

alleged that the BOP miscalculated his First Step Act time credits ("FTCs"), which

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We construe a pro se litigant's papers liberally. *See Hall v. Bellmon*,
935 F.2d 1106, 1110 (10th Cir. 1991). But we do not "serv[e] as the litigant's
attorney in constructing arguments and searching the record." *Garrett v. Selby
Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

he had earned in the seven-month period between his sentencing and arrival at his designated BOP facility.  Exercising jurisdiction under 28 U.S.C. § 1291, we hold that because Mr. Harris failed to show that he actually earned any FTCs through successful participation in qualifying programming, he did not meet his burden to establish entitlement to habeas relief.  We therefore **AFFIRM**.

## BACKGROUND

### I.    Relevant Law

The First Step Act of 2018 ("FSA") mandated the development of a "risk and needs assessment system" to be used "as part of the intake process" for federal prisoners in BOP custody.  18 U.S.C. § 3632(a).  Under the FSA, the BOP must use the risk-and-needs assessment to evaluate each prisoner's recidivism risk, and to assign each prisoner to appropriate programming based on his "specific criminogenic needs."[2]  *Id.* § 3632(a)(1), (3).

The FSA created various "incentives and rewards" for federal prisoners to participate in programs designed to lower recidivism risk.  *Id.* § 3632(d).  FTCs are one such incentive:  A prisoner who "successfully completes" evidence-based

---

[2] The BOP's risk-and-needs assessment system consists of two parts.  The Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") measures and tracks changes in a prisoner's recidivism risk over his term of incarceration.  The Standardized Prisoner Assessment for Reduction in Criminality ("SPARC-13") identifies a prisoner's programming needs across 13 domains that, if addressed, may reduce his recidivism risk.

recidivism reduction programs[3] or productive activities[4] (together, "qualifying programming") "shall earn" FTCs at the statutory rate. *Id.* § 3632(d)(4)(A), (C). The BOP must then apply the prisoner's earned FTCs "toward time in pre-release custody or supervised release." *Id.* § 3632(d)(4)(C).

The FSA sets forth three exceptions to a prisoner's entitlement to earn FTCs. First, the prisoner cannot be serving a sentence for a conviction under certain enumerated offenses. *See id.* § 3632(d)(4)(D). Second, the prisoner cannot be subject to a final order of removal. *See id.* § 3632(d)(4)(E). Third, and most pertinent here, the prisoner cannot earn FTCs for qualifying programming completed either (i) before the FSA's enactment, or (ii) "prior to the date that the prisoner's sentence commences under [18 U.S.C. §] 3585(a)." *See id.* § 3632(d)(4)(A). In turn, § 3585(a) provides that a sentence commences "on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served."

---

[3] An evidence-based recidivism reduction program is a group or individual activity that (i) is supported by empirical evidence or research indicating its effectiveness in reducing recidivism; (ii) "is designed to help prisoners succeed in their communities upon release from prison"; and (iii) may include, among other things, social learning and life skills, parenting skills, academic classes, mental health and substance abuse treatment, vocational training or employment programs, and faith-based services. *See* 18 U.S.C. § 3635(3).

[4] A productive activity is a group or individual activity by which a prisoner determined to have a minimum or low recidivism risk remains productive and thereby maintains his minimum- or low-risk status; this activity may include the delivery of certain programming to other prisoners. *See* 18 U.S.C. § 3635(5).

In 2022, the BOP implemented regulations establishing "procedures for the earning and application" of FTCs.  28 C.F.R. § 523.40(a).  One such regulation provides that "[a]n eligible inmate begins earning [FTCs] after the inmate's term of imprisonment commences," defined as "the date the inmate arrives or voluntarily surrenders at the designated [BOP] facility where the sentence will be served." 28 C.F.R. § 523.42(a).  Other BOP regulations provide that an inmate must be "successfully participating" in qualifying programming to earn FTCs.  28 C.F.R. § 523.41(c)(1).  "Successful participation," in turn, requires "an eligible inmate [to have] participated in the [qualifying programming] that the [BOP] has recommended based on the inmate's individualized risk and needs assessment."  *Id.* § 523.42(c)(2).

## II.    Relevant Facts

Mr. Harris is serving a 144-month term of imprisonment in connection with a federal drug offense.  His projected conditional release date—assuming he successfully completes residential drug treatment—is February 6, 2029.

Mr. Harris was sentenced on April 22, 2021.  For reasons not explained in the record, however, he was held post-sentencing by the U.S. Marshals Service without designation to any BOP facility for roughly seven months.  From April 22 to May 19, Mr. Harris was in "holdover" status at FCI Fort Worth, a BOP facility.  R. vol. I at 60.  Then, from May 19 to November 17, he was considered "in-transit" and housed in non-BOP facilities.  *Id.*  He was finally taken to FCI Texarkana, his designated BOP facility, on November 17, 2021.

4

Mr. Harris claims to have kept himself busy during his seven months awaiting BOP designation. According to him, he first "activat[ed]" his FTC-earning status when he "did the survey in April 2021." *Id.* at 4. He then earned FTCs, he says, by engaging in productive activities, like "[holding] a job as an orderly." *Id.* Sometime later, however, Mr. Harris learned that the BOP would calculate his FTCs only from the date he arrived at his designated facility (November 17, 2021), rather than the date he began serving his sentence (April 22, 2021). In effect, the BOP would improperly exclude seven months' worth of FTCs from his computation which, in turn, would delay his transition to halfway housing and eventual release.

After unsuccessfully pursuing administrative remedies, Mr. Harris filed a habeas petition under 28 U.S.C. § 2241 in the U.S. District Court for the District of Kansas. There, he argued the BOP's policies conflicted with the FSA regarding when a prisoner's sentence "commences" for purposes of FTC-earning eligibility. In his view, while the statute permitted FTC accrual from the moment a prisoner is in federal custody awaiting designation, the policies improperly discounted any FTCs accrued before the prisoner arrives at his designated facility.

The BOP argued in response that its regulations and program statements concerning FTC-earning eligibility (i) flowed directly from the FSA's language and structure, and (ii) reflected its reasonable interpretation of the FSA in light of practical considerations. On the BOP's reading of the statute, a prisoner may "successfully participate[]" in programming to earn FTCs only if he first undergoes an "intake process," during which the BOP performs the risk-and-needs assessment

and then assigns programming "according[]" to the prisoner's identified risks and needs. *Id.* at 17 (quoting § 3632(a)(1), (a)(3), (d)(4)(A)). The BOP further claimed that it could not feasibly administer this intake process before the prisoner arrives at his designated facility. This was so because, as in Mr. Harris's case, prisoners awaiting designation were most often held by the U.S. Marshals Service in non-BOP facilities, and the BOP lacked the ability to require these other facilities to offer the risk-and-needs assessment or any qualifying programming. And consistent with these limitations, BOP records reflected that Mr. Harris had not completed the mandatory intake process until after he arrived at FCI Texarkana—before that time, he had no risk-and-needs assessment scores or program assignments on file, nor was there documentation that he had actually participated in any FTC-earning activities.

Upon review of the parties' briefing, the district court denied Mr. Harris's habeas petition. The court began by acknowledging an apparent tension between the FSA and BOP regulations concerning when a prisoner could begin earning FTCs. The court found that the BOP regulation, by defining a sentence's commencement as the date of the prisoner's *arrival at his designated facility*, had "directly contradict[ed] the plain language of the FSA," which provides explicitly that a sentence commences on the date of the prisoner's *arrival in federal custody awaiting designation*. *Id.* at 140. The court therefore agreed with Mr. Harris that "this portion of the regulation is invalid and cannot justify the denial of [FTCs] for programs completed by a prisoner prior to arrival at the designated facility." *Id.*

6

But the court reasoned further—the FSA *also* provides that a prisoner earns FTCs only if he "successfully completes" qualifying programming, and the BOP had reasonably interpreted "successful completion" to require the prisoner's participation in qualifying programming that was specifically assigned to him based on the results of his risk-and-needs assessment. *Id.* at 141–43. Because Mr. Harris had neither completed the risk-and-needs assessment nor received any program assignments until he arrived at FCI Texarkana, he "[could not] have successfully completed [qualifying programming] for which he could earn credits" before that time. *Id.* at 143. Furthermore, Mr. Harris claimed only in cursory fashion that he had worked as an orderly and taken a survey necessary for FTC-earning eligibility. Beyond that vague claim, he had not provided sufficient information "concerning the alleged productive activities for which he seeks [FTCs]," nor had he "provided any details or evidence from which any calculation of credit could be made." *Id.* Therefore, the court concluded that Mr. Harris had "failed to show that he [had] been wrongfully denied [FTCs] for successful completion of" qualifying programming. *Id.* at 143–44.

Mr. Harris moved for reconsideration, which the district court denied. This appeal timely followed.

## DISCUSSION

### I.    Standard of Review

A writ of habeas corpus may be granted to a federal prisoner who shows that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Petitions under § 2241 are used to attack the

7

execution of a sentence," which includes challenges to the "deprivation of [time] credits." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). A habeas petitioner bears the burden of proving that he is being held contrary to law. *See Walker v. Johnston*, 312 U.S. 275, 287 (1941); *accord Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner.")

"When reviewing the denial of a habeas petition under § 2241, we review the district court's legal conclusions de novo and accept its factual findings unless clearly erroneous." *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1042 (10th Cir. 2017) (internal quotation marks omitted).[5]

## II. Application

On appeal, Mr. Harris maintains that the BOP's regulations are inconsistent with the FSA regarding when a prisoner becomes eligible to earn FTCs. In his view, his FTC-earning eligibility began when he was sentenced and first received in federal custody (April 22, 2021), not when he was later transferred to his designated facility (November 17, 2021). In response, and without conceding that its regulations conflict with the FSA in this regard, the BOP argues that Mr. Harris's focus on the eligibility-triggering event is misplaced because the district court denied his habeas petition on an alternate ground. Namely, the court had concluded, as a matter of law,

---

[5] Because he is a federal prisoner, Mr. Harris need not obtain a certificate of appealability for this court to review the district court's denial of his § 2241 petition. *See Eldridge v. Berkebile*, 791 F.3d 1239, 1241 (10th Cir. 2015).

that Mr. Harris could not have "successfully completed" any qualifying programming without first undergoing a risk-and-needs assessment and being assigned to programs appropriate for his identified risks and needs. In reply, Mr. Harris reiterates that, in fact, he had satisfied the FSA's assessment requirement and opted into FTC-earning status when he took a survey at FCI Fort Worth in April 2021. Mr. Harris insists that he had never opted out of FTC accrual, and that the BOP's own policies recognize his orderly work and other self-directed pursuits as productive activities.

As an initial matter, we observe that this case implicates two closely related questions about a prisoner's FTC entitlement that, within the last three years, have garnered significant attention in the federal courts. The district court grappled with both of them. This court has yet to pass upon either of them.

The first question concerns whether the BOP has appropriately interpreted the FSA's provisions on when a prisoner's sentence "commences" for purposes of FTC-earning eligibility. Here, we note that nearly every federal court faced with this question has concluded—as did the district court in this case—that 28 C.F.R. § 523.42(a) is invalid because it defines a sentence's commencement in a manner contrary to 18 U.S.C. § 3632(a).[6]

---

[6] *See, e.g.*, *Yufenyuy v. Warden, FCI Berlin*, 659 F. Supp. 3d 213, 218 (D.N.H. 2023) (finding the BOP's regulation contradicts "the plain language of the FSA . . . [which] clearly establishes the date upon which the FSA must allow prisoners to start earning FSA time credits"); *Patel v. Barron*, No. C23-937-KKE, 2023 WL 6311281, at *3 (W.D. Wash. Sept. 28, 2023) (unpublished) (finding "the FSA unambiguously requires the BOP" to calculate an inmate's FTC-earning eligibility from the date the inmate is sentenced and committed to BOP custody); *Dane v. Bayless*, No. 5:24-cv-157, 2024 WL 5150683, at *4 (N.D. W. Va. Nov. 20, 2024) (unpublished) (finding

The second question considers whether the BOP has appropriately interpreted the FSA's provisions on how an eligible prisoner "successfully completes" qualifying programming to earn FTCs. Those federal courts to have reached this question—again, including the district court in this case—have mostly answered it in the affirmative. In their view, 28 C.F.R. § 523.41(c) mirrors the FSA's command at 18 U.S.C. § 3632(a) and (d) that a prisoner may earn FTCs only upon "successful completion" of qualifying programming which, in turn, is conditioned on participation in *BOP-assigned* programs based on *BOP-assessed* risks and needs.[7]

---

the BOP's "policy conflicts with the statute insofar as it defines 'commencement of sentence' more narrowly than the statute"), *R. & R. adopted*, 2024 WL 5150650 (N.D. W. Va. Dec. 17, 2024); *Puana v. Williams*, No. 24-cv-01088-CNS, 2024 WL 4932514, at *5 (D. Colo. Dec. 2, 2024) (unpublished) ("There is no gap in the statute as to the date when FSA time credits are available—prisoners are eligible when their sentence commences under 18 U.S.C. § 3585(a)."); *Gale v. Warden, FCI Milan*, No. 24-13127, 2025 WL 223870, at *4 (E.D. Mich. Jan. 16, 2025) (unpublished) (collecting cases).

[7] *See, e.g.*, *Dane*, 2024 WL 5150683, at *5 (concluding a prisoner could not "successfully participate[]" in programming where "the BOP had not yet conducted an assessment to determine the type and amount of programming appropriate for [the prisoner]"); *Shemtov v. Birkholz*, No. 2:24-cv-10630-SRM-JC, 2025 WL 1490543, at *5 (C.D. Cal. Mar. 13, 2025) (unpublished) (concluding the BOP acted reasonably "by awarding FSA credits to Petitioner only . . . when he began participating in [qualifying programing] that the BOP assigned to him based on [his] individualized risk and needs assessment" (internal quotation marks omitted)); *R. & R. adopted*, 2025 WL 1489545 (C.D. Cal. May 22, 2025); *see also Dunlap v. Warden, FMC Devens*, No. 24-cv-11462-RGS, 2024 WL 5285006, at *7 (D. Mass. Dec. 13, 2024) (unpublished) ("There is nothing in the text of the FSA that can be read as suggesting that the [qualifying] programming to be successfully completed could refer to anything other than the assigned [qualifying] programming described in the immediately adjacent sections of the statute. . . . The FSA is plainly designed to, and does, create a system whereby programming is matched to prisoners' needs, and credits are meted out for successful participation in such tailored programming." (internal quotation marks omitted)), *R. & R. adopted*, 2025 WL 35248 (D. Mass.

Ultimately, though, we do not reach these two novel legal questions. This is so because, as a factual matter, Mr. Harris has not shown that he "earned" FTCs by "successfully completing" *any* programming—qualifying or not—between his sentencing and arrival at his designated facility. *See* § 3632(d)(4)(A).

In his habeas petition, Mr. Harris declared that he had qualified for FTCs during his seven-month period awaiting designation by taking a BOP survey and working as an orderly. But as the district court found, he provided *no evidence* of his engagement in qualifying programming (e.g., program descriptions, registration forms, transcripts, course materials, certificates of completion, or other documents showing any activity's start/end dates, amount of credit offered, or BOP-approval status). Meanwhile, the BOP's evidence revealed Mr. Harris's *lack* of engagement in programming before he arrived at FCI Texarkana. More specifically, his first risk-and-needs assessment occurred on December 14, 2021, after he had arrived at FCI Texarkana, and his earliest participation in any qualifying programming was on December 2, 2021, when he was waitlisted for a drug education course.[8] *See* R. vol. I

Jan. 6, 2025); *but see Puana*, 2024 WL 4932514, at *4 (rejecting the BOP's contention that a prisoner "can be 'eligible' for earned time credits but just 'not in earning status'" if he has not completed his risk-and-needs assessment); *Tantuwaya v. Birkholz*, No. 2:24-cv-02891-DMG (MAR), 2024 WL 4805423, at *4 (C.D. Cal. Oct. 10, 2024) (unpublished) ("[T]he statute mandates that an inmate 'shall earn' ETCs for programming completed after his sentence begins, with no requirement that an inmate first complete a recidivism score assessment.").

[8] According to the BOP's evidence, Mr. Harris started earning FTCs 12 days *before* he first completed the risk-and-needs assessment. The BOP explained that prisoners ordinarily undergo the intake process within 28 days of arriving at their designated facility but, "[f]or consistency purposes and to eliminate any discrepancy

11

at 32 ¶¶ 32, 35; *see also id.* at 54, 93–96. Mr. Harris did not dispute this evidence with any of his own. As a factual matter, then, Mr. Harris failed to carry his burden to show that he had successfully completed programs but was denied FTCs in a manner warranting habeas relief. *See Walker*, 312 U.S. at 287; *Espinoza*, 558 F.3d at 89. Thus, he shows no clear error by the district court.

The Fourth Circuit recently had occasion to consider whether a prisoner's entitlement to FTCs requires a showing that he has, in fact, participated in qualifying programming. In *White v. Warden of Fed. Corr. Inst. – Cumberland*, 164 F.4th 326 (4th Cir. 2026), a federal prisoner filed a habeas petition under § 2241, asserting that the BOP had refused to award FTCs for the three days he was held in a transfer center away from his designated facility. *See id.* at 328. The prisoner had not actually participated in qualifying programming during that three-day transit period; likewise, he neither requested nor was offered any programming. *See id.* at 328–29, 331. Nevertheless, the prisoner argued, in relevant part, that "he was entitled to [FTCs] regardless of his participation in programming" because FTC-earning eligibility requires only that a prisoner be in BOP custody and not affirmatively opt out of programs. *See id.* at 329. In a published opinion, the Fourth Circuit disagreed.

---

based on the exact timing of the FSA assessment within the first 28 days, BOP allows inmates to begin earning credits immediately upon arrival to their designated institution." R. vol. I at 28 ¶ 16; *see id.* at 27 ¶ 15. The evidence further indicated that the BOP considers a prisoner "in FTC earning status while on any waitlist" for qualifying programming. *Id.* at 75.

12

It reasoned, under the FSA's plain language, that a prisoner earns FTCs only through actual participation in programs:

> [A] prisoner who "successfully *completes*" qualified programming "shall *earn* time credits" "for every 30 days of successful *participation*" in the programming. The requirements of completing, earning, and participating are defined with active verbs requiring conforming action by the prisoner.

*Id.* at 330 (quoting § 3632(d)(4)(A)) (emphases in original). Because "the record [did] not demonstrate, nor [did] it at all suggest, that [the prisoner] participated in or completed any programming" during his three days in transit, the Fourth Circuit concluded that the BOP properly withheld FTCs for that timeframe. *Id.* at 331; *see id.* at 332; *but see Benson v. Warden, FCI Edgefield*, No. 24-6713, slip op. at *5 (4th Cir. Apr. 22, 2026) (vacating denial of § 2241 petition due to the "liberal construction of *pro se* pleadings and the district court's failure to develop the record" on prisoner's claim—for which evidence was allegedly available—that he had earned approximately 150 FTCs).

We similarly conclude that habeas relief is unwarranted where, as here, the evidence is insufficient to show the prisoner has earned FTCs through actual participation. At bottom, FTCs are granted only to federal prisoners who earn them by participating in qualifying programming. For Mr. Harris, "it is not a question of whether he *successfully* participated; it is a question of whether he participated *at all*, and the record shows that he did not." *White*, 164 F.4th at 333 (emphases in original). The district court therefore did not err in denying habeas relief in this case.

13

## CONCLUSION

For the reasons explained above, we AFFIRM the district court's denial of Mr. Harris's § 2241 petition, and we GRANT his motion to proceed *in forma pauperis* on appeal (Dkt. No. 8).

Entered for the Court

Timothy M. Tymkovich
Circuit Judge